1  RICHARD T. WHITE #58622
   MARK A. DELGADO #215618
2  MADELEINE LOH #233388
   FITZGERALD ABBOTT & BEARDSLEY LLP
3  1221 Broadway, 21st Floor
   Oakland, California 94612
4  Telephone: (510) 451-3300
   Facsimile: (510) 451-1527
5  Email: rwhite@fablaw.com
          mdelgado@fablaw.com
6          mloh@fablaw.com

7  Attorneys for Defendants
   CITY OF OAKLAND, a Municipal Corporation,
8  Acting By and Through Its BOARD OF
   PORT COMMISSIONERS; DARLENE AYERS-JOHNSON;
9  OMAR BENJAMIN; ROBERT CATHEY; CHRIS PETERSON;
   DAVID ALEXANDER; MARSHA PETERSON;
10 MARY RICHARDSON and RICHARD TAYLOR

11              UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

13 HARJIT BHAMBRA, LAKHBIR            Case No.: C08-05326-CRB
   BHAMBRA,
14                                    **MEMORANDUM OF POINTS AND**
             Plaintiffs,             **AUTHORITIES IN SUPPORT OF**
15                                    **MOTION TO DISMISS BY**
        vs.                          **DEFENDANTS CITY OF OAKLAND, A**
16                                    **MUNICIPAL CORPORATION, ACTING**
   PORT OF OAKLAND; DARLENE AYERS-    **BY AND THROUGH ITS BOARD OF**
17 JOHNSON, PRESIDENT, PORT OF        **PORT COMMISSIONERS, DARLENE**
   OAKLAND COMMISSION, Officially and **AYERS-JOHNSON, OMAR BENJAMIN,**
18 individually; OMAR BENJAMIN;       **ROBERT CATHEY, CHRIS PETERSON,**
   EXECUTIVE DIRECTOR, Officially and **DAVID ALEXANDER, MARSHA**
19 individually; ROBERT CATHEY;       **PETERSON, MARY RICHARDSON AND**
   WHARFINGER, Officially and individually; **RICHARD TAYLOR**
20 CHRIS PETERSON; CHIEF WARFINGER,
   Officially and individually; OFFICE OF
21 PORT OF OAKLAND ATTORNEY; DAVID    Fed. R. Civ. Proc. 12(b)(6) and 12(b)(1)
   ALEXANDER; PORT OF OAKLAND
22 ATTORNEY, Officially and individually;
   MARSHA PETERSON; PORT OF
23 OAKLAND ATTORNEY, Officially and
   individually; MARY RICHARDSON, PORT
24 OF OAKLAND ATTORNEY, Officially and Hearing Date: March 20, 2009
   individually; RICHARD TAYLOR,       Hearing Time: 10:00 a.m.
25 WHARFINGER, Officially and individually; Courtroom:    8, 19th Floor
   CITY OF OAKLAND, a Municipal        Judge:        Hon. Charles R. Breyer
26 Corporation; RONALD DELLUMS,
   MAYOR, CITY OF OAKLAND, Officially
27 and individually; WAYNE TUCKER;
   CHIEF OF POLICE, CITY OF OAKLAND,
28 *(Continued on next page)*

1   Officially and individually; OFFICE OF THE
    CITY ATTORNEY, CITY OF OAKLAND;
2   JOHN A. RUSSO, ATTORNEY, CITY OF
    OAKLAND, Officially and individually;
3   MARK MORODOMI, ATTORNEY, CITY
    OF OAKLAND, Officially and individually;
4   SUSAN MOSK, ATTORNEY, CITY OF
    OAKLAND, Officially and individually;
5   WILLIAM NOLAND, DIRECTOR,
    FINANCE AND MANAGEMENT, CITY OF
6   OAKLAND, Officially and individually;
    FRANCINE LARKFIRTH-THOMPSON,
7   MANAGER, PARKING ENFORCEMENT
    DIVISION, CITY OF OAKLAND, Officially
8   and individually; IRA CHRISTIAN,
    SUPERVISOR, PARKING ENFORCEMENT
9   DIVISION, CITY OF OAKLAND, Officially
    and individually; KENNETH RAYFORD,
10  SUPERVISOR II, PARKING
    ENFORCEMENT DIVISION, CITY OF
11  OAKLAND, Officially and individually;
    RONALD ABERNATHY SUPERVISOR II,
12  PARKING ENFORCEMENT DIVISION,
    CITY OF OAKLAND, Officially and
13  individually; AMPCO SYSTEM PARKING;
    a California Corporation; RICHARD
14  KINDORF, PRESIDENT, AMPCO SYSTEM
    PARKING, Officially and individually;
15  ALFRED WEILAND, MANAGER, AMPCO
    SYSTEM PARKING, Officially and
16  individually; LOUIS VELA, GENERAL
    MANAGER, AMPCO SYSTEM PARKING,
17  Officially and individually; and JOHN and
    JANE DOES 1 Through 25,
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................... 3

    A.     The Parties ................................................................................... 3

        1.     Plaintiffs ............................................................................... 3

        2.     The Port Defendants .......................................................... 3

        3.     The City Defendants .......................................................... 4

        4.     The Ampco Defendants ...................................................... 4

    B.     The Authority of the City, Port and Ampco to Issue Parking Citations ............ 5

        1.     California Vehicle Code ..................................................... 5

        2.     City of Oakland Municipal Code ...................................... 6

    C.     The Alleged Racketeering Acts ................................................ 6

        1.     The Parking Citations Issued by Port Employees Cathey, Taylor, and Granger (Alleged Racketeering Act Nos. 2-7, 9-11, 14, 17-32, 35-101) .................................................................................... 6

        2.     The Impoundment of Plaintiffs' Flatbed Trailer by Defendant Cathey (Alleged Racketeering Act Nos. 1 and 102) ........................... 7

        3.     The Parking Citations Issued by Weiland (Alleged Racketeering Act Nos. 12, 14, 33, 34, 218, 219) .................................................. 8

        4.     The City's Processing of the Citations (Alleged Racketeering Act Nos. 103-202) ............................................................................. 8

        5.     The Remaining Alleged Racketeering Acts Involving the Port Defendants (Nos. 8, 235-237, 239, 244-254) ...................................... 8

            (a)     Chris Peterson ........................................................... 8

            (b)     Ayers-Johnson and Benjamin ................................... 9

            (c)     The Port Attorneys ................................................... 9

III.   ARGUMENT .................................................................................................. 9

    A.     Legal Standards ............................................................................. 9

1.    Federal Rule of Civil Procedure 12(b)(6) ................................................. 9

2.    Federal Rule of Civil Procedure 9(b) ..................................................... 10

3.    Federal Rule of Civil Procedure 12(b)(1) ............................................. 10

B.    Plaintiffs' Complaint in Its Entirety Should Be Dismissed Because Plaintiffs Failed to Exhaust Their Administrative Remedies .......................... 10

C.    The Port and its Employees Must Be Dismissed Because, as Matter of Governmental Immunity Law, They Cannot Be Held Liable for the Claims Alleged in the Complaint ................................................................. 11

    1.    RICO Suits Against Public Entities and Public Entity Employees Acting In their Official Capacity Are Impermissible .......................... 12

    2.    Plaintiff's State Law Claims Are Barred by the Immunities in the California Government Tort Claims Act ............................................. 12

        (a)    Government Code Section 815 Immunizes the Port from Plaintiffs' State Law Claims ................................................. 12

        (b)    California Government Code Sections 818.8 and 815.4 Immunize the Port from Liability for the Alleged Misrepresentations of its Employees and Ampco .................... 13

        (c)    Pursuant to California Government Code Section 822.2, The Port's Employees Are Immune From Liability for Alleged Misrepresentations Made in the Scope of Their Employment ........................................................................... 14

        (d)    The Port Employees are Immune from Liability for Discretionary Acts Under California Government Code Section 820.2 ......................................................................... 14

    3.    Defendants Ayers-Johnson, Benjamin, Alexander, Marsha Peterson, and Mary Richardson Are Also Immune from Liability Under California Government Code Section 820.8 ............................. 15

D.    Plaintiffs' First Claim for RICO Violation Should Be Dismissed Because Plaintiffs Fail to Allege Any Indictable Act .................................................. 16

    1.    Plaintiffs Have Not Alleged and Cannot Allege that Defendants Engaged in a Fraudulent Scheme Because Defendants Made No Misrepresentations ............................................................................. 17

    2.    Plaintiffs Have Failed to Allege a Violation of Mail Fraud Because the Alleged Mailings Were Made Pursuant to California Law ......................................................................................................... 19

ii.

3.   Plaintiffs Have Failed to Allege Wire Fraud Because, Among Other Things, Plaintiffs Have Not Sufficiently Alleged *Interstate* Use of Wires .......................................................................................... 20

4.   Plaintiffs Have Failed to Allege Indictable Obstruction of Justice Because None of the Alleged Acts Interfered With Federal Proceedings ..................................................................................... 20

5.   The RICO Claims Against Ayers-Johnson, Benjamin, Alexander, Marsha Peterson, and Richardson Must Be Dismissed Because Plaintiffs Fail to Allege with Specificity the Underlying Fraud .......... 21

6.   The RICO Claim Against the Port Attorneys Must Be Dismissed Because Plaintiffs Have Failed to Allege that They Managed or Conducted the Alleged Enterprise ........................................................ 21

E.   Plaintiff's Second Cause of Action for RICO Conspiracy Must Be Dismissed Because Plaintiffs Have Failed to Adequately Plead a Substantive Violation of RICO ...................................................... 22

F.   Plaintiffs' State Law Claims Fail .................................................................. 22

1.   Plaintiffs Have Not Stated a Claim for Common Law Fraud ............. 23

2.   Plaintiffs Fail to State a Claim for Fraudulent Concealment .............. 23

3.   Plaintiffs Fail to State a Claim for Aiding and Abetting .................... 24

G.   The Seventh, Eighth, Ninth and Tenth Causes of Action Are Not Recognized Claims And Should Be Dismissed ................................................ 24

H.   Alternatively, The Complaint and Action Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1) ..................................................... 25

IV.   CONCLUSION .......................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4   Bell v. Hood
        327 U.S. 678 (1946)..................................................................... 25
5

6   Biofeedtrac v. Kolinor Optical Enterprises & Consultants
        832 F.Supp. 585 (E.D.N.Y.1993) ................................................... 22

7   BMW of North America, Inc. v. Gore
        517 U.S. 559 (1996)..................................................................... 17
8

9   Caldwell v. Montoya
        10 Cal. 4th 972 (1995) ................................................................. 12
10

11  Comwest, Inc. v. American Operator Services, Inc.
        765 F.Supp. 1467 (C.D. Cal. 1991) ................................................ 21

12  Curry v. Baca
        497 F.Supp. 2d 1128 (C.D. Cal. 2007) ........................................... 12
13

14  Dees v. California State University, Hayward
        33 F. Supp.2d 1190 (N.D. Cal. 1998)............................................. 18
15

16  Dorian v. Harich Tahoe Development
        1996 WL 925859 (N.D. Cal. 1996) ................................................ 21

17  Dorsey v. District of Columbia
        917 A.2d 639 (D.C. Cir. 2007) ...................................................... 11
18

19  Durning v. First Boston Corp.
        815 F.2d 1265 (9th Cir. 1987) ....................................................... 10
20

21  Federal Deposit Ins. Corp. v. Nichols
        885 F.2d 633 (9th Cir. 1989) ......................................................... 10
22

23  Furumoto v. Lyman
        362 F.Supp. 1267 (N.D. Cal. 1973)................................................ 16
24

    Grauberger v. St. Francis Hospital
        169 F.Supp.2d 1172 (N.D. Cal. 2001)............................................ 18
25

26  Haggis v. City of Los Angeles
        22 Cal.4th 983 (2000) .................................................................. 13

27  Hal Roach Studios, Inc. v. Richard Feiner & Co.,
        896 F.2d 1542 (9th Cir. 1989) ....................................................... 10
28

iv.

*Hirsch v. Department of Motor Vehicles*
    42 Cal.App.3d 252 (1974) ................................................................. 13

*In re GlenFed, Inc. Securities Litigation*
    42 F.3d 1541 (9th Cir. 1994) ............................................................. 23

*In re Worlds of Wonder Sec. Litig.*
    694 F.Supp. 1427 (N.D. Cal. 1988) ................................................... 21

*Jenkins v. MCI Telecommunications Corp.*
    973 F.Supp. 1133 (C.D. Cal. 1997) ................................................... 24

*Kayport Package Exp., Inc.*
    885 F.2d 531 (9th Cir. 1989) ............................................................. 21

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*
    940 F.2d 397 (9th Cir. 1991) ................................................. 10, 12, 21

*Lundy v. Delmas*
    104 Cal. 655 (1894) ......................................................................... 15

*Lustiger v. United States*
    386 F.2d 132 (9th Cir. 1967) ............................................................. 18

*Marketing West, Inc. v. Sanyo Fisher* (USA) Corp.
    6 Cal.App.4th 603 (1992) ................................................................. 24

*Mazur v. eBay Inc.*
    2008 WL 618988 (N.D. Cal. 2008) ................................................... 23

*McCarthy v. Frost*
    33 Cal. App. 3d 872 (1973) ............................................................... 15

*McNally v. United States*
    483 U.S. 350 (1987) .......................................................................... 17

*Miller v. Yokohama Tire Corp.*
    358 F.3d 616 (9th Cir. 2004) ............................................................. 19

*Milton v. Nelson*
    1975, 527 F.2d 1158 (9th Cir. 1975) ................................................ 15

*Mobley v. Los Angeles Unified School Dist.*
    90 Cal.App.4th 1221 (2001) ............................................................. 25

*Neder v. United States*
    527 U.S. 1 (1999) .............................................................................. 17

*Neibel v. Trans World Assurance Co.*
    108 F.3d 1123 (9th Cir. 1997) ........................................................... 22

v.
PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

1    Odom v. Microsoft Corp.
         486 F.3d 541 (9th Cir. 2007) ................................................................ 10
2

3    O'Malley v. New York City Transit Authority
         896 F.2d 704 (2nd Cir. 1990) ................................................................ 20

4    Parr v. United States
         363 U.S. 370 (1960)......................................................................... 19, 20
5

6    Plaza Hollister Ltd. Partnership v. County of San Benito
         72 Cal.App.4th 1 (1999) ....................................................................... 10
7

8    Posey v. State
         180 Cal. App. 3d 836 (1986) ................................................................. 15

9    Religious Technology Center v. Wollersheim
10        971 F.2d 364 (9th Cir. 1992) ................................................................ 22

11    Reves v. Ernst & Young
         507 U.S. 170 (1993).............................................................................. 22
12

13    Schmuck v. United States
         489 U.S. 705 (1989).............................................................................. 17

14    Schonfeld v. City of Vallejo
15        50 Cal.App.3d 401 (1974) .................................................................... 13

16    Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.
         806 F.2d 1393 (9th Cir. 1986) ......................................................... 17, 21
17

18    Searcy v. Hemet Unified School District
         177 Cal.App.3d 792 (1986) .................................................................. 13

19    Sparks v. City of Compton
20        64 Cal.App.3d 592 (1976) .................................................................... 15

21    Steel Vo. v. Citizens for a Better Environment
         523 U.S. 83 (1998)................................................................................ 25
22

23    Streck v. Peters
         855 F.Supp. 1156 (D. Hawai'i 1994) ................................................... 20

24    Sun Sav. & Loan Ass'n v. Dierdorff
25        825 F.2d 187 (9th Cir. 1987) ................................................................ 16

26    Tokeshi v. State of California
         217 Cal.App.3d 999 (1990) ............................................................. 13, 14
27

28    U.S. v. Curry
         681 F.2d 406 (5th Cir. 1982) ................................................................ 20

U.S. v. Gaskins
    849 F.2d 454 (1988)............................................................................ 24

Unterberger v. Red Bull North America, Inc.
    162 Cal.App.4th 414 (2008) ........................................................... 23

Walter v. Drayson
    538 F.3d 1244 (9th Cir. 2008) ....................................................... 22

Widdows v. Koch
    263 Cal.App.2d 228 (1968) ..................................................... 14, 15

Zatkin v. Primuth
    551 F.Supp. 39 (S.D. Cal. 1982)..................................................... 24

**Statutes**

18 U.S.C.
    §1341 ...................................................................................... 16, 19
    §1343 ...................................................................................... 17, 20
    §1503 ............................................................................................ 20
    §1512 ............................................................................................ 20
    §1513 ............................................................................................ 20
    §1961(1) ....................................................................................... 20
    §1961(1)(A) .................................................................................. 20
    §1961(1)(B) ............................................................................ 16, 20
    §1962(c) ....................................................................................... 16

California Government Code
    §810 .............................................................................................. 12
    §815 ........................................................................................ 12, 13
    §815.4 ..................................................................................... 13, 14
    §818.8 ..................................................................................... 13, 14
    §820.8 ..................................................................................... 15, 16
    §822.2 ........................................................................................... 14

California Vehicle Code
    §22507 ..................................................................................... 5, 18
    §22500 ........................................................................................... 6
    §22658 ..................................................................................... 6, 18
    §40200 ............................................................................... 5, 11, 18
    §40200.3 ......................................................................................... 5
    §40200.4 ......................................................................................... 5
    §40200.5 ................................................................................... 5, 18
    §40200.6 ................................................................................... 5, 18
    §40206(a) ................................................................................ 18, 19
    §40206(b) ........................................................................... 6, 18, 19
    §40215(c)(3) ................................................................................ 11
    §40230(a) .................................................................................... 11

§4760 ............................................................................................................ 18
§5204 ............................................................................................................ 6

Oakland Muncipal Code
§10.32.200 .................................................................................................. 18
§10.08.080 .................................................................................................. 18
§10.32.190 ............................................................................................. 6, 18
§10.48.010 .................................................................................................... 6

**Other Authorities**

Federal Rules of Civil Procedure
12(b)(1) ............................................................................................. 2, 10, 25
12(b)(6) ............................................................................................... 2, 9, 10
9(b) .............................................................................................................. passim

Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D
§1357 (1990) ................................................................................................ 9

I.      **INTRODUCTION**

As the irreparable defects in the Complaint make clear, this is a frivolous and abusive attempt by a disgruntled tenant and former tenant to transform their complaints about lawfully-issued parking tickets into a federal RICO claim.  Pro Se Plaintiffs Harjit Bhambra and Lakhbir Bhambra ("Plaintiffs") allege they are victims of a purported fraudulent parking ticket scheme supposedly conjured up by the City of Oakland, a municipal corporation acting by and through its Board of Port Commissioners  ("Port" or "Port of Oakland")[1] and several Port employees (collectively, the "Port Defendants"); the City of Oakland ("City") and several City officials and City employees (collectively, the "City Defendants"), and Ampco System Parking ("Ampco") and several Ampco employees (collectively, the "Ampco Defendants").

Plaintiffs' Verified Complaint for Racketeer Influenced and Corrupt Organizations ("RICO") Act, and Other Relief ("Complaint" or "Compl.") purports to allege two claims for relief under RICO, along with state law claims for fraud, fraudulent concealment, and aiding and abetting.[2]  At its core, the meandering and, at times, unintelligible Complaint essentially alleges that the Port, City, and Ampco Defendants issued parking citations to vehicles leased by Plaintiffs' companies "on private property without any valid authority or credentials."  See Compl. ¶¶128, 129.  The Complaint further alleges that after issuing these supposedly fraudulent citations, the City sent demands for payment to Plaintiffs through the mail.  This alleged conduct—and little more—purportedly serves as the "predicate acts" upon which Plaintiffs base their RICO and state law claims and for which they seek an outrageous $780 million in damages.

Plaintiffs' Complaint, in its entirety, is completely without merit and must be dismissed.  First, Plaintiffs should not even be allowed to bring their claims in federal court as they have clearly failed to exhaust their administrative remedies.  California law indisputably provides for

---

[1] Plaintiffs have erroneously sued the "Port of Oakland" and the "Office of Port of Oakland Attorney" as separate legal entities.  The Port is a City department and the Port Attorney's Office is a department within the Port.

[2] The Complaint also purports to allege the following "causes of action":  Seventh Cause of Action for "Actual Damages"; Eighth Cause of Action for "Veasely Damages"; Ninth Cause of Action for "Treble Damages  under RICO"; and Tenth Cause of Action for "Defendants' Liability to the Crime."  Each of these purported claims is improper and should be stricken.  See Port Defendants' Motion to Strike.  The Complaint also alleges a claim for

---

1

1  an administrative procedure by which to contest disputed parking citations.  Plaintiffs' failure to

2  exhaust that remedy bars them from now seeking judicial review.

3       Even if Plaintiffs are permitted to bypass the statutory administrative procedure and head

4  straight to federal court to complain about their parking tickets, the Port, as a public entity, and

5  its employees cannot, as matter of governmental immunity law, be held liable for the types of

6  fraud-based claims alleged in the Complaint.

7       The RICO and state law claims are also substantively defective.  Nothing about the

8  allegations in the Complaint comes close to stating a federal RICO claim.  As clearly evidenced

9  by the Exhibits to the Complaint ("Compl. Ex.") and those attached to the Port's Request for

10 Judicial Notice ("RJN"), the Port (and its employees) had proper legal authority pursuant to the

11 California Vehicle Code, the Oakland Municipal Code, and the Oakland City Charter to issue

12 citations to vehicles parked illegally on Port property.  As discussed below, under well-

13 established U.S. Supreme Court precedent, the exercise of that authority cannot, as a matter of

14 law, form the basis of a RICO claim.  Moreover, even if Plaintiffs could maintain a RICO claim

15 against the Port Defendants, they have failed to allege all of the necessary elements of such a

16 claim.  The RICO claim and the RICO conspiracy claim must be dismissed.

17      Equally frivolous are Plaintiffs' state law claims, all of which are premised on the

18 erroneous assumption—made demonstrably false by the Exhibits to the Complaint and the

19 documents attached to the RJN—that the Port Defendants misrepresented their authority to issue

20 parking citations for illegally-parked vehicles.  The state law claims suffer from a number of

21 other fatal defects, as Plaintiffs have not plead—and indeed cannot plead—most, if not all, of

22 the elements necessary to state a claim against the Port Defendants.

23      Plaintiffs should not be allowed to transform the federal courts into a general venue for

24 ordinary disputes over parking tickets.  Pursuant to Federal Rules of Civil Procedure 9(b),

25 12(b)(1), and 12(b)(6), the Complaint should be dismissed.

26

27

28

Negligence against only the City Defendants.

## II. FACTUAL BACKGROUND[3]

### A. The Parties

#### 1. Plaintiffs

Plaintiff Harjit Bhambra owns Exel Intermodal (dba Bay Area Transportation), a transportation business, which, until late December 2008, was located at 2565 Buna Street, in Oakland.[4]  Compl. ¶2.  Plaintiff Lakhbir Bhambra owns Metro Logistic, also a transportation business, and also located at 2565 Buna Street.  Compl. ¶3.  2565 Buna Street is Port property. Compl. ¶3; RJN Exs. F, G.

#### 2. The Port Defendants

Established in 1927, the Port is an independent department of the City of Oakland.  See Article VII of Oakland City Charter, Compl. Ex. N.  The exclusive control and management of the Port Department is vested in the Board of Port Commissioners ("Board").  Id.  At the time of the filing of the Complaint, the President of the Board was Darlene Ayers-Johnson ("Ayers-Johnson").  Compl. ¶8.  The Port's Executive Director is Omar Benjamin ("Benjamin").  Compl. ¶11.  The Port Attorney's Office, a department within the Port, is headed by David Alexander ("Alexander").  Compl. ¶25.  Marsha Peterson and Mary Richardson ("Richardson") are Deputy Port Attorneys.  Compl. ¶¶25, 27, 29.

Within the Port's Maritime Division, the Wharfingers are responsible for monitoring Port and terminal operations activities and enforcing lease terms for use of Port facilities, buildings, structures, land and water areas.  See Wharfinger Job Description, Compl. Ex. K.  Chief Wharfinger Chris Peterson has first line supervisory responsibilities.  Id.  He supervises four full-time Wharfingers, including Robert Cathey ("Cathey") and Richard Taylor ("Taylor"). Among other things, the Wharfingers are responsible for "enforc[ing]… applicable City of Oakland Traffic Code provisions…and issue citations for OTC violations as appropriate."  Id.

---

[3] Although the Port Defendants dispute many of the facts alleged in the Complaint, the following summary assumes their truth for purposes of this motion only, except where contradicted by documents attached to the Complaint or by judicially noticeable facts and relevant statutory authority.

[4] Exel Intermodal was the defendant in an Unlawful Detainer action filed by the Port in Alameda Superior Court. Following judgment in favor of the Port, Exel Intermodal was evicted from the property on December 28, 2008. RJN Ex. G.  Harjit Bhambra has since  filed a Wrongful Eviction action against the Port and its attorneys.  Id.

1   Cathey and Taylor have taken the City's Oath of Office authorizing them to "perform the job

2   duties of the office of Wharfinger."  See Cathey Oath of Office, Compl. Ex. K; RJN Ex. A.

3               **3.    The City Defendants**

4        The City Defendants include the City, Mayor Ronald Dellums, Chief of Police Wayne

5   Tucker ("Tucker"), the Office of the City Attorney, City Attorney John Russo, Supervising

6   Deputy City Attorney Mark Morodami, Deputy City Attorney Susan Mosk; the City's Director,

7   Finance &. Management Agency William E. Noland ("Noland"), the City's Manager of Parking

8   Enforcement Division Francine Larkfirth-Thompson ("Larkfirth-Thompson"), City Parking

9   Enforcement Division Supervisor Ira Christian ("Christian"), City Parking Enforcement

10  Division Supervisor II Kenneth Rayford ("Rayford"), and City Parking Enforcement Division

11  Supervisor II Ronald Abernathy ("Abernathy").  Compl. ¶¶31-58.

12       The crux of the allegations against the City Defendants is that they "manufactured"

13  parking citation booklets that were then sent to the Port and Ampco Defendants to issue to

14  vehicles (including those allegedly belonging to Plaintiffs' companies) that were parked illegally

15  on City property (including in areas operated by the Port).  Compl. ¶76.  Plaintiffs allege that the

16  City "manufactured and assigned" these citation booklets knowing that the Ampco and Port

17  Defendants purportedly lacked "proper authority" to issue citations.  Id.  According to the

18  Complaint, the City, upon receiving notice of the violations, processed the citations and notified

19  the California Department of Motor Vehicles (DMV) of unpaid fines.  Id.  This alleged

20  "widespread scheme" was, according to Plaintiffs, designed "to collect thousands or hundreds of

21  thousands, if not millions of dollars from the Public-at-large."  Compl. ¶79.

22       The majority of the City Defendants (including the City Attorneys, Tucker, Noland,

23  Larkfirth-Thompson, Rayford, Abernathy, and Christian) are involved only insofar as they

24  corresponded with Plaintiffs regarding their demand for an investigation and/or because they

25  allegedly failed to investigate Plaintiffs' complaints.  Compl. ¶¶88, 90-92, 94-95, 97-100.

26               **4.    The Ampco Defendants**

27       The Ampco Defendants include Ampco, Ampco's President Richard Kindorf, and

28  Ampco employees Alfred Weiland ("Weiland") and Louis Vela.  Compl. ¶¶59-68.  Ampco

1    operates a trucking lot on Port property at 2498 West 16th Street in Oakland.  Compl. Exs. C, K.

2        On or about October 26, 2007, Plaintiff Harjit Bhambra signed a Parking Agreement

3    with Ampco on behalf of his company Exel Intermodal.  Compl. Ex. C.  The Parking

4    Agreement expressly provides that use of the trucking lot is "for storage of the [transportation]

5    Equipment only."  Id.  The Agreement further states that "User agrees to follow yard procedure

6    and rules" and that "Violators shall be issued citations."  Id.

7        Both the Port and the City have confirmed to Plaintiffs the authority of Ampco

8    employees to issue tickets on Port property.  Compl. Exs. B (letter from Port dated May 29,

9    2008) and N (letter from City Attorney's office dated September 30, 2008).

10       **B.    The Authority of the City, Port and Ampco to Issue Parking Citations**

11       The authority of the City and the Port to issue and process parking citations and to

12   contract with private entities (such as Ampco) to issue citations is derived from the California

13   Vehicle Code, the City of Oakland Municipal Code, and the Oakland City Charter.[5]

14           **1.    California Vehicle Code**

15       California Vehicle Code section 22507 states, in pertinent part, "Local authorities may,

16   by ordinance or resolution, prohibit or restrict the...parking ...of vehicles...on certain streets or

17   highways, or portions thereof, during all or certain hours of the day."

18       California Vehicle Code sections 40200 et seq. distinguishes between the entity that

19   issues citations—"issuing agency"—and the entity that processes the notices of violations—

20   "processing agency."  See Cal. Veh. Code, §§40200.4-40200.6  Section 40200.5 provides that

21   an "issuing agency may elect to contract with the county, with a private vendor, or with any

22   other city or county processing agency...for the processing of parking violations and notices of

23   delinquent parking violations..."  Per section 40200.6, "[i]f a contract is entered pursuant to

24   Section 40200.5...processing agency means the contracting party responsible for the processing

25   of the notices of parking violations and notices of delinquent parking violations."  Pursuant to

26   section §40200.3, "All parking penalties collected by the processing agency, which may be the

27   _____

28   [5] For the benefit of the Court, Defendants have attached relevant sections of the California Vehicle Code, the
     Oakland Municipal Code, and the Oakland City Charter  to the RJN.

1  issuing agency,…shall be deposited to the account of the issuing agency…."

2      The Vehicle Code also sets forth the procedure by which the owner of a vehicle receives

3  notice of a parking citation and notice of a delinquent violation, including that "Delivery of a

4  notice of a delinquent parking violation…may be made by personal service or by first-class mail

5  addressed to the registered owner."  Cal. Veh. Code §40206(b) (emphasis added).

6               **2.**    **City of Oakland Municipal Code**

7      In accordance with the authority granted to it by the State, the City of Oakland has

8  adopted a series of codes and ordinances that govern the stopping, standing, and parking of

9  vehicles.  See Oakland Municipal Code ("OMC") attached as RJN Ex. B.  Included in the OMC

10  at Title 10: Vehicles and Traffic, section 10.48.010, are the following provisions:[6]

| Oakland Traffic Code Section | Description | Fine |
|---|---|---|
| 10.16.070 | Parking on private property | $35.00 |
| 10.28.250 | No parking any time | $35.00 |
| 10.280.040 | Parking over eighteen inches of the left-hand curb | $35.00 |

14      The City vests the authority to regulate parking at the Port to the Port Commissioners

15  through Oakland Municipal Code section 10.32.190.  The Commissioners can limit parking and

16  access within the Port, and "[w]hen provided by resolution of the Board of Port Commissioners

17  and appropriate signs are in place and visible giving notice thereof, no person shall park any

18  vehicle at any time on any roadway or other areas so indicated."  OMC §10.32.190.[7]

19      **C.**    **The Alleged Racketeering Acts**

20      Plaintiffs' claims are premised on 255 alleged "Racketeering Acts" presented in the

21  Appendix to the Complaint.[8]  The Racketeering Acts are summarized as follows.

22          **1.**    **The Parking Citations Issued by Port Employees Cathey, Taylor, and Granger (Alleged Racketeering Act Nos. 2-7, 9-11, 14, 17-32, 35-101)**

24      The vast majority of the purported Racketeering Acts alleged in the Complaint and in the

[6] All citations issued to Plaintiffs (and attached to the Complaint) were issued pursuant to these three OMC sections and/or California Vehicle Code sections 22500 (general statute prohibiting parking in specified areas), 22658 (authorizing removal of vehicle from private property), and 5204 (requiring registration tabs).  Compl. Ex. P.

[7] The authority of the City to regulate parking is also vested in the Port through the City Charter.  Compl. Ex. N.

[8] Although the Appendix to the Complaint numbers 254 such Racketeering Acts, in fact, Plaintiffs have misnumbered the acts and included two Racketeering Acts No. 73, bring the total number to 255.

1   Appendix (Alleged Racketeering Act Nos. 2-7, 10, 14, 17-32, 35-57, 59-67, 72, 73(2)-82, 85-
2   100) concern approximately one hundred parking citations issued by Cathey in his capacity as
3   Wharfinger.  The Complaint and Appendix allege that, from August 2007 to September 2008,
4   Cathey issued parking citations to Plaintiffs' "short-term lease equipment" parked at one of four
5   locations: Maritime Street, on Chung King Street, and at Berths 9 and 10.[9]  All four of these
6   locations are, contrary to the allegations in the Complaint, City or Port property.  See RJN Ex.
7   F.  Plaintiffs generally allege that Cathey "knowingly, willfully and intentionally advertise[d]
8   that Defendant CATHEY is an officer of Defendant CITY" and that "CATHEY did cause to be
9   sent and delivered via the UNITED STATES POSTAL SERVICE, the original citations to
10  Defendant CITY, for the collection of fines (and any subsequent penalties) to leased equipment
11  owners (lessors) located throughout the United States."  Compl. ¶¶14-16, 155-156; Compl. App.
12  ¶¶2-7, 10, 14, 17-32, 35-57, 59-67, 72, 73(2)-82, 85-100.

13          Plaintiffs make virtually identical claims against other Port employees.  Defendant
14  Taylor, another Wharfinger—either on his own or with Cathey—issued ten citations between
15  October 2007 and August 2008.  Compl. App. ¶¶58, 68-71, 73(1), 83, 84.  Plaintiffs also allege
16  that Wharfinger Granger issued one citation in August 2008.  Compl. App. ¶101.

17                  **2.      The Impoundment of Plaintiffs' Flatbed Trailer by Defendant
18                  Cathey (Alleged Racketeering Act Nos. 1 and 102)**

19          Racketeering Act Nos. 1 and 102 generally allege that on August 28, 2007, Cathey
20  "provided false information in the police report which he signed, that…[Plaintiffs' flatbed]
21  trailer was parked on private property and further stated that had [sic] the authority to tow
22  vehicles from Defendant CITY Streets without an official badge or valid authority from
23  Defendant CITY."  Compl. App. ¶¶1, 102.  Plaintiffs further allege that the Oakland Police
24  Department impounded the trailer and that Cathey and Oakland Police Officer Jeffrey
25  Thompson, who allegedly towed the trailer, have a "close personal relationship."  Id.

26

27  [9] It is unclear from the Complaint whether the vehicles cited by the Wharfingers were leased by Plaintiffs or by
28  their companies.  The Notices attached as Compl. Ex. P indicate that most of the citations were leased by Bay Area
    Logistics, the former dba of Harjit Bhambra's company Exel Intermodal.  Compl. ¶2.

1

2             **3.**      **The Parking Citations Issued by Weiland (Alleged .**
                      **Racketeering Act Nos. 12, 14, 33, 34, 218, 219)**[10]

3

4        The Complaint and Appendix allege that Ampco Defendant Weiland issued two citations

5 to "plaintiff's short-term lease equipment" in March 2008.  Compl. App. ¶¶12, 14.  Plaintiffs

6 also allege that, in June 2008, Weiland issued one citation to a Lexis and another to "the public

7 at large."  Compl. App. ¶33, 34.  Both June citations were "revoked" by the City.  Compl. ¶98.

8 All four citations signed by Weiland were issued at the Ampco-operated trucking lot at 2498

9 16th Street.  Compl. App. ¶¶12, 14, 33, 34, 218, 219.  Plaintiffs allege that Weiland "received

10 blank parking citation booklets directly from City employees and co-conspirators" and, with

11 respect to the two June citations, that he "knowingly, willfully and intentionally caused to be

12 sent and delivered as a routine business practice via UNITED STATES POSTAL SERVICE,

13 the original citations to Defendant CITY, for the collection of fines (and any subsequent

14 penalties) to leased equipment owners (lessors) located throughout the United States."  Id.

15             **4.**      **The City's Processing of the Citations (Alleged Racketeering**
                      **Act Nos. 103-202)**

16

17        Racketeering Act Nos. 103-202 all allege the same basic facts: from September 2007 to

18 September 2008, the City processed citations issued by Cathey, Taylor, and Weiland "without

19 verifying the information on the citation[s]" and Cathey, Taylor and/or Weiland "knowingly,

20 willfully and intentionally caused to be sent and delivered, as a routine business practice, the

21 citation[s] via the UNITED STATES POSTAL SERVICE," to the City.

22             **5.**      **The Remaining Alleged Racketeering Acts Involving the Port**
                      **Defendants (Nos. 8, 235-237, 239, 244-254)**

23

24        Plaintiffs make additional cursory and vague allegations regarding purported conduct by

25 Defendants Chris Peterson, Ayers-Johnson, Benjamin, and the Port Attorneys.

26             **(a)**     **Chris Peterson**

27        Plaintiffs spuriously and without any factual basis allege that Chris Peterson "create[d]

28 ──────────────────────────
[10] Alleged Racketeering Act Nos. 12 and 14 are virtually identical to Alleged Act Nos. 218 and 219.

1   what appears to be a back-dated letter to create the alleged authority covering WEILAND's

2   involvement" and sent the letter "via wire to the Defendant CITY ATTORNEY." Compl. ¶¶21-

3   22; Compl. App. ¶¶235, 237.  Plaintiffs also allege that Chris Peterson "willfully, unlawfully

4   and knowingly allowed its wharfingers to write official parking citations on Defendant CITY

5   Streets and receive blank Defendant CITY Parking Citation booklets from Defendant CITY

6   corrupt employees to threaten plaintiffs and public at large without any badge..." Compl. ¶¶159-

7   160; Compl. App. ¶236.

8                          **(b)   Ayers-Johnson and Benjamin**

9           Without averring any specific facts, Plaintiffs allege that Defendants Ayers-Johnson and

10   Benjamin permitted the Wharfingers to receive blank citation booklets from the CITY and to

11   collect fines and penalties "from lease-equipment owners throughout the United States to further

12   generate profits for Defendant CITY."  Compl. ¶¶8-13, 151-154; Compl. App. ¶¶245-246.

13                          **(c)   The Port Attorneys**

14           Again without any details, Plaintiffs allege that Port Attorneys Alexander, Marsha

15   Peterson, and Richardson "cause[d] to be sent and delivered via the UNITED STATES

16   POSTAL SERVICE, letters addressed separately to Plaintiff Harjit Bhambra containing false,

17   misleading and/or fraudulent information about the valid authority and official badge allegedly

18   possessed by Defendant CATHEY."  Compl. ¶¶23-30, 161-171; Compl. App. ¶¶249-254.

19   Plaintiffs further allege that the Port Attorneys failed to investigate Plaintiffs' complaints.  Id.

20   **III.   ARGUMENT**

21        **A.   Legal Standards**

22             **1.   Federal Rule of Civil Procedure 12(b)(6)**

23           Rule 12(b)(6) contemplates dismissal of a complaint, or any cause of action, if it fails to

24   state a claim.  While allegations of a complaint are to be construed in favor of the pleader, those

25   allegations must be ones of well-plead facts.  The Court can and should ignore "legal

26   conclusions," "unwarranted inferences," and "unwarranted deductions," Wright & Miller,

27   FEDERAL PRACTICE & PROCEDURE: CIVIL 2D §1357, pp. 315-318 (1990).

28             In addition to the allegations of the complaint, a court may consider exhibits submitted

9

1  with the complaint, documents whose contents are alleged in the complaint when authenticity is

2  not questioned, and matters that may be judicially noticed.  Hal Roach Studios, Inc. v. Richard

3  Feiner & Co., 896 F.2d 1542, 1555, n. 19 (9th Cir. 1989).  The Court may disregard allegations

4  in the complaint if contradicted by facts established by reference to documents attached as

5  exhibits to the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

6  **2.      Federal Rule of Civil Procedure 9(b)**

7  Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with

8  particularity.  It provides: "In all averments of fraud ..., the circumstances constituting fraud ...

9  shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

10 person may be averred generally."  Fed. R. Civ. P. 9(b).  "The pleader must state the time, place,

11 and specific content of the false representations as well as the identities of the parties to the

12 misrepresentation."  Odom v. Microsoft Corp., 486 F.3d 541, 553-554 (9th Cir. 2007).

13 Rule 9(b) applies to allegations of fraud that purport to form the basis of a RICO claim.

14 Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).

15 **3.      Federal Rule of Civil Procedure 12(b)(1)**

16 Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter

17 jurisdiction. As with a rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion that

18 attacks the complaint on its face, the court must view only the well-pled factual allegations of

19 the complaint as true.  Federal Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 636 (9th Cir. 1989);

20 **B.      Plaintiffs' Complaint in Its Entirety Should Be Dismissed Because
         Plaintiffs Failed to Exhaust Their Administrative Remedies**

21

22 At the outset, the Complaint should be dismissed because Plaintiffs have failed to

23 exhaust their administrative remedies by not contesting the authority of the Port Defendants to

24 issue parking citations through statutorily-created administrative processes. "The doctrine of

25 exhaustion of administrative remedies provides that 'where an administrative remedy is provided

26 by statute, relief must be sought from the administrative body and this remedy exhausted before

27 the courts will act.'"  Plaza Hollister Ltd. Partnership v. County of San Benito, 72 Cal.App.4th 1,

28 29-30 (1999).  The doctrine is "a fundamental rule of procedure laid down by courts of last

1    resort, followed under the doctrine of stare decisis, and binding upon all courts."  Id. at 30.

2            California Vehicle Code section 40200 et seq. sets forth the process for review of

3    contested citations: an initial review by the issuing agency; a subsequent "independent,

4    objective, fair, and impartial" administrative hearing (Cal. Veh. Code § 40215(c)(3)); and

5    review of the administrative hearing by "appeal to be heard by the ... municipal court, where the

6    same shall be heard de novo...." (Cal. Veh. Code, § 40230(a)).

7            Here, the citations issued to Plaintiffs (see Compl. Ex. P) contained clear-cut instructions

8    on how to contest them.[11]  Because Plaintiffs fail to allege that they contested the citations

9    through the administrative process afforded them in the California Vehicle Code, their

10   Complaint, in its entirety is barred.  See, e.g., Dorsey v. District of Columbia, 917 A.2d 639

11   (D.C. Cir. 2007) (Plaintiff's complaint about the issuance and adjudication of parking tickets

12   with hand-held devices barred because Plaintiff failed to exhaust administrative remedies).

13           Furthermore, even if Plaintiffs were to contest unsuccessfully the citations in municipal

14   court, they would have absolutely no recourse to a higher court and certainly not to federal

15   court.  The statutory scheme does not provide for further review of the municipal court decision.

16   Smith v. City of Los Angeles Dept. of Transportation, (1997) 59 Cal.App.4th Supp. 7.  In

17   Smith, the appellate department of the superior court concluded that it did not have jurisdiction

18   to hear an appeal from a municipal court ruling on a parking citation and "that the procedure for

19   review set forth in [Vehicle Code] section 40200 et seq. is the only procedure available to

20   contest a parking citation." (emphasis added).  In other words, Plaintiffs' sole remedy to contest

21   the citations was through the statutory administrative hearing and municipal court.  The federal

22   courts simply are not a proper forum to protest parking tickets.

23           **C.      The Port and its Employees Must Be Dismissed Because, as Matter of**
             **Governmental Immunity Law, They Cannot Be Held Liable for the**
24           **Claims Alleged in the Complaint**

25           The Port is a public entity.  Compl. ¶4.  All claims, including the RICO cause of action,

26   must be dismissed because the Port Defendants, as public entities and as public employees, are

27   _____
     [11] Several of the citations in Exhibit B state "You may contest this citation at the 'CONTESTING ADDRESS' in
28   person or by mail.  You have 21 calendar days from date of issuance or 14 calendar days from mailing of this
     notice to contest.  For contesting information, call the 'CITATION INFORMATION' number."

                                                   11
     PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB
     1/16/09 (25763) #325272.1

1  sheltered from such suits pursuant to various statutory and judicially-created immunities.

2          **1.      RICO Suits Against Public Entities and Public Entity
                      Employees Acting In their Official Capacity Are
3                     Impermissible**

4          The Port and its employees are protected from Plaintiffs' RICO claim because such

5  "public entity suits" are impermissible under RICO.  In order to prevail on a RICO claim, a

6  plaintiff must prove that defendants acted with a specific intent to deceive.  See <u>Lancaster</u>

7  <u>Community Hosp. v. Antelope Valley Hosp. Dist.</u>, 940 F.2d 397, 404 (9th Cir. 1991).  However,

8  "governmental entities are incapable of forming [the] malicious intent" necessary to support a

9  RICO action.  <u>Id</u>.; see also <u>Pedrina v. Chun</u>, 97 F.3d 1296, 1300 (9th Cir. 1996) (summarily

10  rejecting residential tenants' RICO claims against the City of Honolulu).  It is also well

11  established that suits against public entity employees acting in their "official capacity…equate

12  to public entity suits, and are therefore impermissible."  <u>Curry v. Baca</u>, 497 F.Supp. 2d 1128,

13  1136 (C.D. Cal. 2007).  Accordingly, Plaintiffs' first and second causes of action (for RICO and

14  RICO conspiracy) must be dismissed without leave to amend.

15          **2.      Plaintiff's State Law Claims Are Barred by the Immunities in
                      the California Government Tort Claims Act**
16

17          California common law has long provided public entities and their employees

18  immunities that bar many forms of liability.  <u>Caldwell v. Montoya</u>, 10 Cal. 4th 972, 979 (1995).

19  These common law doctrines were codified in the Tort Claims Act, Government Code sections

20  810 et. seq. <u>Id</u>. at 980.  These immunities are grounded in the important public policy concern

21  "that the fear of lawsuits might deter officials from the zealous and unflinching discharge of

22  their public duties." <u>Id</u>. at 979.  As discussed below, these immunities completely bar the third,

23  fourth, and fifth causes of action against the Port Defendants.

24          **(a)     Government Code Section 815 Immunizes the Port
                      from Plaintiffs' State Law Claims**
25

26          California Government Code section 815 eliminates liability for public entities for "an

27  act or omission of the public entity or a public employee or any other person," except as

28  otherwise provided by statute.  See <u>Searcy v. Hemet Unified School District</u>,177 Cal.App.3d

12

PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB
1/16/09 (25763) #325272.1

1   792, 802 (1986).  This provision abolished common law liabilities and requires express citation

2   to statutory liability.  See Haggis v. City of Los Angeles, 22 Cal.4th 983 (2000). With respect to

3   their claims for fraud, negligent misrepresentation and aiding and abetting, Plaintiffs have not

4   alleged and indeed cannot allege any statute that overrides Section 815 immunity.  Accordingly,

5   the state law claims against the Port must be dismissed.

6           **(b)    California Government Code Sections 818.8 and 815.4**
                     **Immunize the Port from Liability for the Alleged**
7                    **Misrepresentations of its Employees and Ampco**

8           As a public entity, the Port (including the Office of Port Attorney), cannot be liable for

9   injuries caused by misrepresentations by its employees, whether the misrepresentations are

10  negligent or intentional.  Cal. Gov. Code §818.8; Harshbarger v. Colton, 197 Cal. App. 3d 1335

11  (1988).  The immunity also applies to fraudulent concealment.  Schonfeld v. City of Vallejo, 50

12  Cal. App. 3d 401, 419 (1974).  Furthermore, the Port is not liable for any alleged

13  misrepresentation or concealment by Ampco.  See Cal. Gov. Code §815.4 (a public entity is

14  immune to liability for the acts or omissions of an independent contractor if the entity would not

15  have been liable had the act or omission been that of an employee of the public entity).

16          Plaintiffs cannot evade sections 818.8 and 815.4 by calling their fraud claims something

17  else.  So long as the "gravamen of the action" is financial injury suffered because of public

18  employees' alleged misrepresentations, the public entity is immune from liability.  Tokeshi v.

19  State of California, 217 Cal.App.3d 999, 1007 (1990) (§818.8 barred claims for Food &

20  Agricultural Code violations when "the gravamen of their action, pure and simply, is that they

21  suffered injuries purportedly caused by their reliance on [public employee's] misinformation");

22  Hirsch v. Department of Motor Vehicles, 42 Cal.App.3d 252, 258 (1974) (§818.8 barred action

23  for seizure of plaintiff's car because DMV's issuance of title documents was

24  "misrepresentation"); Brown v. Los Angeles, 267 Cal.App.2d 849, 850-851 (1968) (§818.8

25  barred claim because city's erroneous notice of zoning violations was "misrepresentation").

26          Plaintiffs' Complaint is premised on the alleged misrepresentations by Port, City and

27  Ampco employees regarding the authority of the Port and Ampco to issue citations and on

28  alleged misrepresentations by Port and City employees regarding their investigation of that

1   issue. Compl. ¶79. These employees also allegedly attempted to conceal the "Racketeering

2   Enterprise." Id. Plaintiffs assert that, because of these alleged misrepresentations, they suffered

3   business losses and injuries. Id. This is precisely the type of alleged conduct for which sections

4   818.8 and 815.4 provide absolute immunity to public entities.

5          **(c)    Pursuant to California Government Code Section 822.2, The Port's Employees Are Immune From Liability for Alleged**

6                   **Misrepresentations Made in the Scope of Their Employment**

7      Like the Port, its employees are immune from all of Plaintiffs' state law claims.

8   California Government Code section 822.2 provides:

9          A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such

10         misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice.

11

12      Section 822.2, like section 818.8, applies so long as the gravamen of the claim is a

13   financial loss suffered in reliance on alleged misrepresentations by the government employee.

14   Tokeshi, supra, 217 Cal.App.3d at 1008. Plaintiffs are seeking damages because, in the course

15   and scope of their employment, Port employees allegedly concealed material facts and made

16   misrepresentations regarding their authority to issue citations. Section 822.2 clearly applies.

17          **(d)    The Port Employees are Immune from Liability for Discretionary Acts Under California Government Code**

18                **Section 820.2**

19      The Port's employees are also immune under Government Code section 820.2:

20          Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission

21         was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

22

23      Section 820.2 applies even if the public employee acted maliciously, so long as the act or

24   omission was discretionary rather than ministerial. Widdows v. Koch, 263 Cal.App.2d 228, 238

25   (1968). Discretionary acts are those at "'the planning level versus the operational level.'" Id.

26      Plaintiffs allege that the Port Defendants, through their employees, "have developed a

27   practice and issued these parking citations...in concert with each other...." Compl. ¶¶77-78.

28   Plaintiffs further allege that "Each Defendant has participated in the *operation and management*

1  of…the widespread scheme." Compl. ¶78 (emphasis added). In fact, according to Plaintiffs,

2  every Port Defendant was responsible for "lay[ing] the groundwork for the scheme or artifice to

3  defraud Plaintiffs and Public-at-large." Compl. ¶¶150, 152, 154, 156. 158, 160, 162, 165, 168,

4  171. These allegations clearly place the Port employees' purported conduct in the category of

5  "planning" rather than merely carrying out "a basic policy already formulated," (Widdows at

6  238), thus constituting discretionary acts protected by section 820.2.

7       The decisions by Port Wharfingers to issue parking citations are also discretionary acts.

8  Whether or not to cite an offender for a violation is a discretionary decision of law enforcement.

9  See, e.g., McCarthy v. Frost, 33 Cal. App. 3d 872 (1973) (decision whether to arrest is an

10  exercise of discretion for which an officer may not be held liable); Sparks v. City of Compton,

11  64 Cal. App. 3d 592 (1976) (officer's decision to stop or pursue a suspect is discretionary);

12  Posey v. State,180 Cal. App. 3d 836, 850 (1986) (officer's decision to remove vehicle

13  obstructing traffic in violation of Vehicle Code is discretionary act under section 820.2).

14              **3.   Defendants Ayers-Johnson, Benjamin, Alexander, Marsha
                 Peterson, and Mary Richardson Are Also Immune from**
15              **Liability Under California Government Code Section 820.8**

16       California Government Code section 820.8 states: "Except as otherwise provided by

17  statute, a public employee is not liable for an injury caused by the act or omission of another

18  person." Thus, for example, prison supervisory personnel whose personal involvement was not

19  alleged could not be held responsible for the acts of their subordinates under California law.

20  Milton v. Nelson, 1975, 527 F.2d 1158 (9th Cir. 1975); see also Lundy v. Delmas, 104 Cal. 655

21  (1894) (members of board of regents of state university were not individually liable to one

22  injured by a telegraph wire fallen from a line maintained by university along a highway).

23       Here, Plaintiffs allege in general fashion that Defendants Ayers-Johnson, Benjamin, and

24  the Port Attorneys (including Alexander, Marsha Peterson, and Richardson) "permitted

25  Defendants…to advertise, and display an unofficial or otherwise unauthorized badge, issue

26  parking citations and tow private vehicles without proper authority…" Compl. ¶¶9, 12, 25, 27,

27  29. Plaintiffs also generally allege that these individuals "conspired, assisted, encouraged, and

28  otherwise aided and abetted one or more of the other Defendants in the unlawful, misleading,

1    and fraudulent conduct alleged herein." Compl. ¶¶7, 10, 26, 28, 30.  Moreover, in the section of

2    their Complaint labeled "Defendants [sic] Participation", Plaintiffs allege, *on information and*

3    *belief,* that "during or before December 2004…Defendants [Ayers-Johnson, Benjamin,

4    Alexander, Richardson, and Marsha Peterson]…used telephone lines (via telephone or Telefax)

5    and proposed that the Defendant CITY officials would provide blank citation booklets…and

6    Defendant PORT employees would be issuing parking citation on behalf of Defendant CITY

7    (without an official badge or valid authority…" Compl. ¶¶151, 153, 161, 163, 166, 169.

8         Remarkably, nowhere in either the 80-page Complaint or in the 103-page Appendix do

9    Plaintiffs provide any specific details as to the alleged conduct by these Defendants.  Merely

10   alleging, without the requisite specificity, that these employees "authorized" or "endorsed" the

11   acts of others is not sufficient to circumvent section 820.8 immunity.  Furumoto v. Lyman, 362

12   F.Supp. 1267 (N.D. Cal. 1973) (in civil rights case, section 820.8 "specifically precludes…

13   liability" against board of trustees for allegedly supporting racism and for "managing and

14   controlling the University and vesting authority and responsibility for student conduct and

15   discipline in the President.")  Because Plaintiffs' claims against Ayers-Johnson, Benjamin,

16   Alexander, Marsha Peterson, and Richardson are based solely on the acts of the others,

17   Government Code section 820.8 precludes a finding of liability against these Defendants.

18         **D.    Plaintiffs' First Claim for RICO Violation Should Be Dismissed
                 Because Plaintiffs Fail to Allege Any Indictable Act**

19

20         Even if Plaintiffs were able to demonstrate that they had exhausted their administrative

21   remedies and that their claims were not barred by the immunities discussed above, their RICO

22   claim and state law causes of action still fail to state a claim.

23         Plaintiffs' first claim alleges a violation of 18 U.S.C. § 1962(c), predicated on purported

24   mail and wire fraud.  Compl. ¶¶224-228, 252-62.  "Liability under §1962(c) requires (1) the

25   conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sun Sav. & Loan

26   Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987).  "'Racketeering activity' is defined in 18

27   U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal

28   statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C.

1  § § 1343, which makes wire fraud a crime." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.,</u>

2  <u>Inc.</u>, 806 F.2d 1393, 1399 (9th Cir. 1986).

3       Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to allege that

4  Defendants committed any underlying "indictable" offense.

5       **1.    Plaintiffs Have Not Alleged and Cannot Allege that**
        **Defendants Engaged in a Fraudulent Scheme Because**
6       **Defendants Made No Misrepresentations**

7       To make a claim for federal mail and wire fraud, Plaintiffs must adequately plead a

8  "fraudulent scheme." <u>Schmuck v. United States</u>, 489 U.S. 705 (1989) (plaintiffs must prove

9  both use of mail and scheme to defraud).  In <u>Neder v. United States</u>, 527 U.S. 1, 21-25 (1999),

10 the Supreme Court underscored that the term "defraud" in the mail and wire fraud statutes is

11 given its established common law meaning.  See also <u>BMW of North America, Inc. v. Gore</u>, 517

12 U.S. 559, 579 (1996) ("[A]ctionable fraud requires a material misrepresentation or omission").

13 A fraudulent scheme involves using "dishonest methods or schemes and usually signifies the

14 deprivation of something of value by trick, deceit, chicanery or overreaching." <u>McNally v.</u>

15 <u>United States</u>, 483 U.S. 350, 358 (1987), superseded by statute on other grounds.  Merely

16 asserting that Defendants made "misrepresentations," without alleging that any specific

17 representation was false or misleading, does not establish a "scheme."

18      Plaintiffs maintain that the Port Defendants "issued parking citations on private property

19 without any valid authority or credentials." Compl. ¶6.  Plaintiffs further allege that Port

20 Defendants Cathey and Taylor "advertised, that [they are] working for the Defendant CITY and

21 [have] authority from the Defendant CITY to issue parking citations to the Public-at-large…"

22 Compl. ¶¶15, 18.  This "fraudulent activity," according to Plaintiffs, was consummated when

23 the Port Defendants "mail[ed] the citations and/or demands for payments (including penalties)

24 via the UNITED STATES POSTAL SERVICE throughout the United States (including the state

25 of California), to leased equipment owners (lessors)."   The primary flaw in all of these

26 allegations is that none involved a plan or scheme to "defraud" Plaintiffs because **all of the**

27 **statements allegedly made by the Port Defendants are true**:

28      • The Port, as a department of the City, has authority to issue citations to vehicles

17

PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB
1/16/09 (25763) #325272.1

on Port property.  Cal. Veh. Code §§22507, 40200 et seq.; OMC §§10.08.080, 10.32.190, 10.32.200; see also Oakland City Charter Article VII, Compl. Ex. N.

- The Port, as a department of the City, has the authority to tow vehicles parked on Port property.  Id.  see also Cal. Veh. Code §22658.

- All Wharfingers (including Cathey and Taylor) have "valid authority [and] credentials" to issue citations on Port property.  Id.; see also Compl. Exs. K (Job Description and Cathey Oath of Office); RJN Ex. A (Taylor Oath of Office).

- The Port and the City have not only the right, but also the legal obligation, to send notices through the mail to those who receive parking citations.  Cal. Veh. Code §40206(a) (requiring delivery of notice of parking citation and demand for payment); Cal. Veh. Code §40206(b) (delivery of notice made by mail).

- The Port and the City have the right and the legal obligation to send demands for payment through the mail to those who receive parking citations.  Id.

- The Port and the City have the right and legal obligation to notify the DMV of unpaid citations.  Cal. Veh. Code, §§4760, 40220(a).

- The Port and the City have the right to vest the Ampco Defendants with authority to issue citations on Port property on the same forms used by the Oakland Police.  Cal. Veh. Code §§40200.5, 40200.6; OMC §§10.08.080, 10.32.200.

Plaintiffs cannot state a claim under RICO based on their patently false belief that the Port Defendants did not have the authority to write parking citations.  In order to constitute a violation of RICO, the alleged conduct must be at least "in some respects false" or "fraudulently deceptive and misleading, exhibiting an intent and purpose to defraud."  Lustiger v. United States, 386 F.2d 132, 137 (9th Cir. 1967).   "In other words, the racketeering activity must amount to, or pose a threat of, continued criminal activity."  Grauberger v. St. Francis Hospital, 169 F.Supp.2d 1172, 1176 (N.D. Cal. 2001) (emphasis added).  Citing acts as a part of a RICO pattern, which on the face of the pleadings are not indictable, is not sufficient.  Dees v. California State University, Hayward, 33 F. Supp.2d 1190, 1202 (N.D. Cal. 1998) (RICO case dismissed because Department of Labor's alleged mishandling of university employee's

1   discrimination complaint was not indictable and did not constitute "racketeering activity").

2   Here, not only have Plaintiffs failed to allege any false representations and/or an intent to

3   deceive, all of the conduct they have alleged is clearly true and, indeed, warranted by the law.

4   Without any alleged fraudulent purpose or intent behind Defendants' actions, Plaintiffs' claims

5   of mail and wire fraud cannot be sustained, and therefore the RICO claim must fail.

6   **2.   Plaintiffs Have Failed to Allege a Violation of Mail Fraud**
    **Because the Alleged Mailings Were Made Pursuant to**
7   **California Law**

8   In addition to proving that Defendants formed a scheme or artifice to defraud,

9   Plaintiffs—in order to allege a violation of mail fraud under 18 U.S.C. §1341—must also

10  demonstrate that Defendants "used the United States mails or caused a use of the United States

11  mails in furtherance of the scheme." Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th

12  Cir. 2004) (emphasis added).  However, a claim of mail fraud cannot be premised on "alleged

13  mailings made or caused to be made under the imperative command of duty imposed by state

14  law." Parr v. United States, 363 U.S. 370, 391 (1960)

15  In Parr, a criminal case alleging a violation of 18 U.S.C. §1341, the Supreme Court held

16  that tax statements, checks in payment of taxes, and receipts of payments mailed by a school

17  board were not sent in furtherance of a scheme to defraud the school district of its revenue

18  because such mailings were "made or caused to be made under the imperative command of duty

19  imposed by state law." Parr, 363 U.S. at 391.  This was so even if individuals "who are so

20  required to do the mailing…plan to steal, when or after received, some indefinite part of its

21  moneys." Id.  The Court also held that the mail fraud claim failed because the mailings (notices

22  and checks) did not constitute "false pretenses and misrepresentations." Id. at 392.

23  Here, as in Parr, the mailing of notices of citations and demands for payment was made

24  pursuant to state law.  See Cal. Veh. Code §40206(a) (requiring delivery of notice of citation

25  and demand for payment) and Cal. Veh. Code §40206(b) (delivery of notice made by mail).  In

26  addition, the citations and demands for payment were completely truthful—they contained no

27  "false pretenses" or "misrepresentations."  Indeed, Plaintiffs have not alleged that the mailings

28  themselves were false.  Because the mailing of citations and demands for payment was

19

PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

1/16/09 (25763) #325272.1

1  completed in accordance with state law and because the mailings were not themselves false or

2  fraudulent, they cannot, as a matter of law, have been in furtherance of the alleged conspiracy.

3  <u>Parr v. U. S.</u> at 389-390; see also <u>U.S. v. Curry</u>, 681 F.2d 406, 412 (5th Cir. 1982) ("mailings of

4  documents which are required by law to be mailed, and which are not themselves false and

5  fraudulent, cannot be regarded as mailed for the purpose of executing a fraudulent scheme.")

6        **3.    Plaintiffs Have Failed to Allege Wire Fraud Because, Among
              Other Things, Plaintiffs Have Not Sufficiently Alleged**
7              ***Interstate* Use of Wires**

8        Although not the only defect in Plaintiffs' wire fraud allegations, perhaps the most

9  obvious is their failure to allege the use of <u>interstate</u> wires in furtherance of the alleged scheme.

10  Indeed, all of the parties are located and all of the alleged conduct occurred in Oakland.  A

11  telephone call or use of telefax must be interstate to violate the wire fraud statute, 18 U.S.C.

12  §1343.  <u>First Pacific Bancorp, Inc. v. Bro</u>, 847 F.2d 542, 547 (9th Cir. 1988) ("The allegation of

13  wire fraud is also unsupported, since there is no evidence of interstate wire communication.").

14        **4.    Plaintiffs Have Failed to Allege Indictable Obstruction of
              Justice Because None of the Alleged Acts Interfered With**
15             **Federal Proceedings**

16        Plaintiffs also cursorily suggest that their RICO claims may be based on an alleged

17  "obstruction of justice."  Compl. ¶¶229-231.  Even if true—which it is not—this allegation is

18  insufficient to prove indictable obstruction of justice pursuant to RICO because Plaintiffs do not

19  allege that Defendants obstructed federal proceedings or any of the other specified "obstruction

20  of justice" predicates for a RICO claim.[12]  See <u>O'Malley v. New York City Transit Authority</u>,

21  896 F.2d 704, 708 (2nd Cir. 1990) (in defining "racketeering activity", Congress not only

22  included obstruction of justice by reference to 18 U.S.C. §1503,, which is expressly limited to

23  federal court proceedings, §1961(1)(B); but it also failed to include obstruction of justice as one

24  of the generic state law crimes under §1961(1)(A)); <u>Streck v. Peters</u>, 855 F.Supp. 1156, 1162

25  (D.Hawaii 1994) (failure to allege perjury in federal proceeding precluded using obstruction of

---

26  [12] See 18 U.S.C. section 1961(1) (prescribing the indictable offenses for "obstruction of justice", including 18
U.S.C. section §1503 (obstruction of justice in federal proceeding), section 1510 (obstruction of criminal
27  investigations), section 1511 (obstruction of State or local law enforcement by gambling operation), section §1512
(tampering with a witness, a victim, or an informant, and section §1513 (retaliating against a witness, victim, or an
28  informant)).

1    justice as predicate offense).

2    **5.    The RICO Claims Against Ayers-Johnson, Benjamin, Alexander,**
     **Marsha Peterson, and Richardson Must Be Dismissed Because**
3    **Plaintiffs Fail to Allege with Specificity the Underlying Fraud**

4        The particularity requirements of Federal Rule of Civil Procedure 9(b) apply to RICO

5    claims.  Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).

6    This pleading rule applies to each defendant alleged to have engaged in the purported fraud.

7    Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).  "A

8    RICO pleading must attribute specific conduct to each defendant in the scheme."  Dorian v.

9    Harich Tahoe Development, 1996 WL 925859, *2 (N.D. Cal. 1996).  "Allegations based on

10   'information and belief' do not satisfy the particularity requirement of Fed.R.Civ.P. 9(b)…"  In

11   re Worlds of Wonder Sec. Litig., 694 F.Supp. 1427, 1432-33 (N.D. Cal. 1988).

12       Here, as discussed more fully above, Plaintiffs' claims against Defendants Ayers-

13   Johnson, Benjamin, and the Port Attorneys (including Alexander, Marsha Peterson, and

14   Richardson) are based on nothing more than cursory allegations that these Defendants

15   "permitted" or "authorized" the Wharfingers to issue allegedly fraudulent parking citations.  The

16   Complaint contains no dates or times of the alleged acts and otherwise fails to attribute specific

17   conduct to each of these Defendants.  Furthermore, most of the general allegations involving

18   these individuals are, according to the Complaint, based on "information and belief."  Compl.

19   ¶¶151, 153,161, 163, 166, 169.  Absent the requisite specificity, pursuant to Rule 9(b), Plaintiffs'

20   RICO claim against these individuals must be dismissed.  Comwest, Inc. v. American Operator

21   Services, Inc., 765 F.Supp. 1467, 1476 (C.D. Cal. 1991) (dismissing RICO claim for failure "to

22   plead the time, date, place, and content of the alleged misrepresentations"); see also Moore v.

23   Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989).

24   **6.    The RICO Claim Against the Port Attorneys Must Be**
     **Dismissed Because Plaintiffs Have Failed to Allege that They**
25   **Managed or Conducted the Alleged Enterprise**

26       The Port Attorney Defendants also cannot be held liable under RICO because their

27   alleged role was limited to researching and writing letters to Plaintiffs regarding the authority of

28   Port and Ampco employees to issue parking tickets.  Compl. App. ¶¶249-254.  Allegations of

---

21

PORT DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

1  attorneys acting in their limited legal capacity do not establish the "continuity of activity"

2  required to establish a pattern of racketeering activity.  Religious Technology Center v.

3  Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992) (where attorneys' only goal was prosecution

4  of suit, there could be no threat of continuing activity necessary for RICO claim).  Furthermore,

5  Plaintiffs do not allege that the Port attorneys had "some part in directing the enterprise's

6  affairs," the "conduct" necessary to subject a defendant to RICO liability under section 1962(c).

7  Reves v. Ernst & Young, 507 U.S. 170, 179 (1993); Biofeedtrac v. Kolinor Optical Enterprises

8  & Consultants, 832 F.Supp. 585, 590 (E.D.N.Y.1993) (attorney who suborned perjury and

9  engaged in mail and wire fraud not sufficiently involved in directing affairs of enterprise to

10  sustain RICO liability).  Writing letters to Plaintiffs and refusing to investigate Plaintiffs'

11  frivolous complaint is simply not enough to state a RICO claim against the Port Attorneys.  See,

12  e.g., Walter v. Drayson, 538 F.3d 1244, 1248 (9th Cir. 2008) (allegations that an attorney "wrote

13  emails, gave advice, and took positions on behalf of her clients,,,[and] failed to stop illegal

14  activity" were not enough to state RICO claim against the attorney).

15      **E.      Plaintiff's Second Cause of Action for RICO Conspiracy Must Be
                Dismissed Because Plaintiffs Have Failed to Adequately Plead a
16              Substantive Violation of RICO**

17          In order to state a viable claim for conspiracy in violation of section 1962(d), a plaintiff

18  must allege either an agreement that is a substantive violation of RICO or that defendants agreed

19  to commit, or participated in, a violation of two predicate offenses.  Baumer v. Pachl, 8 F.3d

20  1341, 1346 (9th Cir. 1993).  "[I]f the section 1962(c) claim does not state an action upon which

21  relief could ever be granted, regardless of the evidence, then the section 1962(d) claim cannot be

22  entertained."  Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1127 (9th Cir. 1997).

23          Here, as discussed above, Plaintiffs have not adequately plead and cannot adequately

24  plead a substantive violation of RICO.  Even if Plaintiffs properly claimed that Defendants

25  agreed to be a part of an enterprise, their failure to allege substantive violations precludes their

26  claim that there was a conspiracy to violate RICO.

27      **F.      Plaintiffs' State Law Claims Fail**

28          Plaintiffs' common law claims against the Port Defendants—(1) fraud and

1  misrepresentation; (2) concealment; and (3) aiding and abetting—are also fatally defective.

2  **1.    Plaintiffs Have Not Stated a Claim for Common Law Fraud**

3  Even assuming the statutory immunities did not apply, Plaintiffs' state law claims still

4  must dismissed as they have clearly failed to plead with specificity all of the requisite elements.

5  The elements of common law fraud are (1) a misrepresentation, (2) knowledge of falsity, (3)

6  intent to defraud, (4) justifiable reliance, and (5) damage.  See, e.g., <u>Unterberger v. Red Bull</u>

7  <u>North America, Inc.</u>, 162 Cal.App.4th 414, 423 (2008) As stated above, "[Rule] 9(b)] require[s]

8  plaintiff to plead with specificity the facts, circumstances, statements and misrepresentations

9  that constitute the fraud….The same level of specificity is required with respect to reliance."

10  <u>Mazur v. eBay Inc.</u>, 2008 WL 618988, *13 (N.D. Cal. 2008).

11  Here, Plaintiffs' allegations do not come close to the requisite specificity with which a

12  fraud claim must be alleged.  Instead, Plaintiffs simply allege that Defendants, in general, made

13  "multiple verbal and written representations to Plaintiffs regarding the investigation by the

14  Clerk's office" and that the "representations were material in nature and false."  Compl. ¶272.

15  With respect to the purported intent to defraud, Plaintiffs blithely allege, without any specificity,

16  that "Defendants intended that Plaintiffs act upon the multiple verbal and written, falso and

17  material representations."  Compl. ¶275.  In terms of their alleged reliance, Plaintiffs simply

18  aver, again without any specificity, that they "relied on the multiple verbal and written

19  representations made by each of the Defendants in connection with the investigation."  Compl.

20  ¶¶ 277-278.  Without more, these allegations fail to satisfy the requirements of Rule 9(b).

21  More importantly, Plaintiffs' fraud claim must be dismissed because, as discussed above,

22  none of the alleged statements was untrue.  In order to constitute actionable fraud, "[t]he

23  statement in question must be false."  <u>In re GlenFed, Inc. Securities Litigation</u>, 42 F.3d 1541,

24  1547-1548 (9th Cir. 1994).  As the Exhibits to the Complaint and to the RJN make clear, all of

25  the statements allegedly made by the Port with respect to its authority to issue citations were and

26  are undeniably true.  Plaintiffs' fraud claim is patently frivolous and should be dismissed.

27  **2.    Plaintiffs Fail to State a Claim for Fraudulent Concealment**

28  The elements of a cause of action for fraudulent concealment are: "(1) the defendant

23

1  must have concealed or suppressed a material fact, (2) the defendant must have been under a

2  duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

3  suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

4  unaware of the fact and would not have acted as he did if he had known of the concealed or

5  suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

6  must have sustained damage." Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6

7  Cal.App.4th 603, 612-613 (1992). Rule 9(b)'s pleading requirements apply to claims of

8  fraudulent concealment. Zatkin v. Primuth, 551 F.Supp. 39, 43 (S.D. Cal. 1982).

9      Again, Plaintiffs have not specifically alleged most, if not all, of the elements of a

10  concealment claim. They have not identified any fact that was concealed; have not identified

11  any duty owed to them by the Port; have not specifically identified who had the requisite intent

12  to defraud; and have not alleged that they would have acted as they did had they known of the

13  purportedly concealed or suppressed fact. The concealment claim should be dismissed.

14              **3.    Plaintiffs Fail to State a Claim for Aiding and Abetting**

15      The elements "under an aiding and abetting theory are (1) that the accused had the

16  specific intent to facilitate the commission of a crime by another, (2) that the accused had the

17  requisite intent of the underlying substantive offense, (3) that the accused assisted or

18  participated in the commission of the underlying substantive offense, and (4) that someone

19  committed the underlying substantive offense." U.S. v. Gaskins, 849 F.2d 454, 459 (1988). As

20  discussed above, Plaintiffs have failed, at a minimum, to allege that a substantive underlying

21  offense was committed. Accordingly, their claim for aiding and abetting fails.

22      **G.    The Seventh, Eighth, Ninth and Tenth Causes of Action Are Not
            Recognized Claims And Should Be Dismissed**

23

24      As the court explained in Jenkins v. MCI Telecommunications Corp., 973 F.Supp. 1133,

25  fn 10. (C.D. Cal. 1997), "'causes of action' for punitive damages, declaratory relief, and

26  injunctive relief are not causes of action [but] are remedies…[and] [t]herefore, they need not be

27  addressed by this Court." Here, Plaintiffs' Seventh Cause of Action (for "Actual Damages"); the

28  Eighth Cause of Action (for "Veasely Damages"); and the Ninth Cause of Action ("For Treble

1  Damages Under RICO") are not "causes of action" and should be dismissed.

2      Similarly unavailing is Plaintiffs' Tenth Cause of Action for "Defendants' Liability to the

3  Crime." In this purported claim, Plaintiffs simply reassert and then summarize their previous

4  allegations and make blatant unsubstantiated references to alleged violations of state law

5  (without actually referring to any specific state statute). "Plaintiffs cannot simply cite a few

6  facts and then invent causes of action to cover them." Mobley v. Los Angeles Unified School

7  Dist., 90 Cal.App.4th 1221, 1239-1240 (2001). "Defendants' Liability to the Crime" is not a

8  "recognized cause[] of action under California law."

9      **H.    Alternatively, The Complaint and Action Should Be Dismissed**
       **Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

10

11     Even if the Court decides that Plaintiffs' state law claims arguably have some merit—

12  which they clearly do not—the entire Complaint should still be dismissed because the RICO

13  claim is completely frivolous. Under Federal Rule of Civil Procedure 12(b)(1), dismissals in

14  cases premised on federal question jurisdiction are allowed where the federal claim is (i)

15  immaterial and made solely for the purpose of obtaining jurisdiction, or (ii) wholly insubstantial

16  or frivolous, or (iii) so patently without merit that they require no meaningful consideration.

17  Steel Vo. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998); Bell v. Hood, 327 U.S.

18  678, 682-683 (1946). Plaintiffs' Complaint meets each of the three categories that justify

19  dismissal for want of federal subject matter jurisdiction under Rule 12(b)(1).

20  **IV.   CONCLUSION**

21     This lawsuit is patently frivolous, wholly unreasonable, and completely devoid of any

22  legal foundation. Plaintiffs should not be allowed to proceed with a federal RICO claim simply

23  because they are upset about parking tickets. The Court should not permit Plaintiffs to continue

24  wasting its own time and resources and Defendants' time and resources by pursuing this baseless

25  and improper suit. The Complaint in its entirety should be dismissed without leave to amend.

26  Dated: January 16, 2009          FITZGERALD ABBOTT & BEARDSLEY LLP

27                                   By _____
                                        Richard T. White
28                                      Attorneys for Defendants

                                        25