1 | ALAN G. ROSS, Bar No. 162859
ERIC J. WERSCHING, Bar No. 229415
2 | ROSS & WERSCHING LLP
Attorneys at Law
3 | 3151 Airway Ave., Suite S-1
Costa Mesa, CA 92626
4 | Telephone: (714) 444-3900
Facsimile: (714) 444-3901
5 | E-Mail: agr@rossllp.com

6 | Attorneys for Defendants
AMPCO SYSTEM PARKING
7 | RICHARD KINDORF,
ALFRED WEILAND and LOUIS VELA

8

9 |                    UNITED STATES DISTRICT COURT

10 |            NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

11

12 | HARJIT BHAMBRA, LAKHBIR BHAMBRA,

13 |                 Plaintiffs,

14 |         vs.

15 | PORT OF OAKLAND; DARLENE AYERS-JOHNSON, PRESIDENT, PORT OF
16 | OAKLAND COMMISSION, Officially and individually; OMAR BENJAMIN;
17 | EXECUTIVE DIRECTOR, Officially and individually; ROBERT CATHEY;
18 | WHARFINGER, Officially and individually; CHRIS PETERSON; CHIEF WARFINGER,
19 | Officially and individually; OFFICE OF PORT OF OAKLAND ATTORNEY; DAVID
20 | ALEXANDER; PORT OF OAKLAND ATTORNEY, Officially and individually;
21 | MARSHA PETERSON; PORT OF OAKLAND ATTORNEY, Officially and
22 | individually; MARY RICHARDSON, PORT OF OAKLAND ATTORNEY, Officially and
23 | individually; RICHARD TAYLOR, WHARFINGER, Officially and individually;
24 | CITY OF OAKLAND, a Municipal Corporation; RONALD DELLUMS,
25 | MAYOR, CITY OF OAKLAND, Officially and individually; WAYNE TUCKER;
26 | CHIEF OF POLICE, CITY OF OAKLAND, *(Continued on next page)*
27 | Officially and individually; OFFICE OF THE CITY ATTORNEY, CITY OF OAKLAND;
28 | JOHN A. RUSSO, ATTORNEY, CITY OF

Case No.: C08-05326-CRB

**NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANTS AMPCO SYSTEM PARKING, RICHARD KINDORF, ALFRED WEILAND AND LOUIS VELA;**

**MEMORANDUM OF POINTS & AUTHORITIES AND DECLARATION OF ALAN G. ROSS IN SUPPORT OF MOTION**

Fed. R. Civ. Proc. 12(b)(6) and 12(b)(1)

Hearing Date: May 29, 2009
Hearing Time: 10:00 a.m.
Courtroom:     8, 19th Floor
Judge:         Hon. Charles R. Breyer

1  OAKLAND, Officially and individually;
   MARK MORODOMI, ATTORNEY, CITY
2  OF OAKLAND, Officially and individually;
   SUSAN MOSK, ATTORNEY, CITY OF
3  OAKLAND, Officially and individually;
   WILLIAM NOLAND, DIRECTOR,
4  FINANCE AND MANAGEMENT, CITY OF
   OAKLAND, Officially and individually;
5  FRANCINE LARKFIRTH-THOMPSON,
   MANAGER, PARKING ENFORCEMENT
6  DIVISION, CITY OF OAKLAND, Officially
   and individually; IRA CHRISTIAN,
7  SUPERVISOR, PARKING ENFORCEMENT
   DIVISION, CITY OF OAKLAND, Officially
8  and individually; KENNETH RAYFORD,
   SUPERVISOR II, PARKING
9  ENFORCEMENT DIVISION, CITY OF
   OAKLAND, Officially and individually;
10 RONALD ABERNATHY SUPERVISOR II,
   PARKING ENFORCEMENT DIVISION,
11 CITY OF OAKLAND, Officially and
   individually; AMPCO SYSTEM PARKING;
12 a California Corporation; RICHARD
   KINDORF, PRESIDENT, AMPCO SYSTEM
13 PARKING, Officially and individually;
   ALFRED WEILAND, MANAGER, AMPCO
14 SYSTEM PARKING, Officially and
   individually; LOUIS VELA, GENERAL
15 MANAGER, AMPCO SYSTEM PARKING,
   Officially and individually; and JOHN and
16 JANE DOES 1 Through 25,

17                     Defendants.

18

19

20

21        **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22        **PLEASE TAKE NOTICE** that on May 29, 2009 at 10:00 a.m., or as soon thereafter as

23 the matter may be heard in Courtroom 8, 19th Floor, of the above captioned Court, Defendants

24 Ampco System Parking, Richard Kindorf, Alfred Weiland and Louis Vela (the "Ampco

25 Defendants") will, and hereby do, move the Court for an order dismissing in their entirety

26 Plaintiffs' claims against the Ampco Defendants.  The Ampco Defendants file this motion under

27 Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

28

For the following reasons, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint fails to state a claim upon which relief can be granted:

1.     Plaintiffs failed to exhaust their administrative remedies.

2.     Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to allege that Defendants committed any underlying "indictable" offense.

3.     Plaintiffs have not alleged and cannot allege that the Defendants engaged in a fraudulent schemed because Defendants made no misrepresentations.

4.     Plaintiffs have failed to allege a violation of mail fraud because the alleged mailings were made pursuant to California law.

5.     Plaintiffs have failed to allege wire fraud because they have not alleged interstate use of wires. Plaintiffs have failed to allege indictable obstruction of justice because none of the alleged acts interfered with federal proceedings.

6.     The RICO claims against the individual Ampco Defendants must be dismissed because Plaintiffs fail to allege with specificity the underlying fraud.

7.     The RICO claims against the Defendants must be dismissed because Plaintiffs have failed to allege that Defendants managed or conducted the alleged enterprise.

8.     Plaintiffs' Second Cause of Action for RICO Conspiracy must be dismissed because Plaintiffs have failed to adequately plead a substantive violation of RICO.

9.     Plaintiffs have not stated a claim for common law fraud.

10.     Plaintiffs fail to state a claim for fraudulent concealment.

11.     Plaintiffs fail to state a claim for aiding and abetting.

12.     The Seventh, Eighth, Ninth and Tenth Causes of Action are not recognized claims and should be dismissed.

In the alternative, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because, absent the RICO claim, this Court lacks subject matter jurisdiction over the Complaint and over this case.

This motion is based on the pleadings and papers on file in this action, this Notice of Motion and Motion, the Memorandum of Points & Authorities, Declaration of Alan G. Ross and Request for Judicial Notice filed herewith, all documents in the Court record, and such other evidence and argument as is presented at the hearing of this motion.

Dated: April 4, 2009                          ROSS & WERSCHING LLP

                                              By _____
                                                  Alan G. Ross
                                                  Attorneys for Defendants AMPCO SYSTEM
                                                  PARKING, RICHARD KINDORF, ALBERT
                                                  WEILAND AND LOUIS VELA

AMPCO DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

# MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.    SUMMARY OF ARGUMENT ..................................................................... 2

III.    FACTUAL BACKGROUND ........................................................................ 4

    A.    The Parties ............................................................................................ 4

        1.    Plaintiffs ................................................................................... 4

        2.    The Port Defendants ................................................................ 4

        3.    The City Defendants ................................................................ 5

        4.    The Ampco Defendants ........................................................... 5

    B.    The Authority of the City, Port and Ampco to Issue Parking Citations ............. 6

        1.    California Vehicle Code ........................................................... 6

        2.    City of Oakland Municipal Code ............................................ 7

    C.    The Alleged Racketeering Acts ............................................................ 7

        1.    The Parking Citations Issued by Port Employees Cathey, Taylor, and Granger (Alleged Racketeering Act Nos. 2-7, 9-11, 14, 17-32, 35-101) ........................................................................... 7

        2.    The Impoundment of Plaintiffs' Flatbed Trailer by Defendant Cathey (Alleged Racketeering Act Nos. 1 and 102) ................................ 8

        3.    The Parking Citations Issued by Weiland (Alleged Racketeering Act Nos. 12, 14, 33, 34, 218, 219) ............................................ 8

        4.    The City's Processing of the Citations (Alleged Racketeering Act Nos. 103-202) ...................................................................... 9

        5.    The Remaining Alleged Racketeering Acts Involving the Port Defendants (Nos. 8, 235-237, 239, 244-254) ......................... 9

IV.    ARGUMENT ............................................................................................... 10

    A.    Legal Standards .................................................................................. 10

1.  Federal Rule of Civil Procedure 12(b)(6) .............................................. 10

2.  Federal Rule of Civil Procedure 9(b) .................................................... 11

3.  Federal Rule of Civil Procedure 12(b)(1) .............................................. 11

B.  Plaintiffs' Complaint in Its Entirety Should Be Dismissed Because
    Plaintiffs Failed to Exhaust Their Administrative Remedies............................ 11

C.  Plaintiffs' First Claim for RICO Violation Should Be Dismissed Because
    Plaintiffs Fail to Allege Any Indictable Act ...................................................... 12

    1.  Plaintiffs Have Not Alleged and Cannot Allege that Defendants
        Engaged in a Fraudulent Scheme Because Defendants Made No
        Misrepresentations ................................................................................. 13

    2.  Plaintiffs Have Failed to Allege a Violation of Mail Fraud
        Because the Alleged Mailings Were Made Pursuant to California
        Law........................................................................................................... 15

    3.  Plaintiffs Have Failed to Allege Wire Fraud Because, Among
        Other Things, Plaintiffs Have Not Sufficiently Alleged *Interstate*
        Use of Wires............................................................................................ 16

    4.  Plaintiffs Have Failed to Allege Indictable Obstruction of Justice
        Because None of the Alleged Acts Interfered With Federal
        Proceedings ............................................................................................. 16

    5.  The RICO Claims Against the Ampco Defendants Must Be
        Dismissed Because Plaintiffs Fail to Allege with Specificity the
        Underlying Fraud .................................................................................... 17

D.  Plaintiff's Second Cause of Action for RICO Conspiracy Must Be
    Dismissed Because Plaintiffs Have Failed to Adequately Plead a
    Substantive Violation of RICO ...................................................................... 188

E.  Plaintiffs' State Law Claims Fail........................................................................ 18

    1.  Plaintiffs Have Not Stated a Claim for Common Law Fraud ............... 18

    2.  Plaintiffs Fail to State a Claim for Fraudulent Concealment ................ 19

    3.  Plaintiffs Fail to State a Claim for Aiding and Abetting....................... 20

F.  The Seventh, Eighth, Ninth and Tenth Causes of Action Are Not
    Recognized Claims And Should Be Dismissed ................................................ 20

G.  Alternatively, The Complaint and Action Should Be Dismissed Pursuant
    to Federal Rule of Civil Procedure 12(b)(1) .................................................... 20

V.      CONCLUSION ................................................................................................. 21

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

4

Bell v. Hood
(1946) 327 U.S. 678 ................................................................................... 21

5

BMW of North America, Inc. v. Gore
517 U.S. 559 (1996) ................................................................................. 13

6

7

Comwest, Inc. v. American Operator Services, Inc.
765 F.Supp. 1467 (C.D. Cal. 1991)........................................................... 17

8

9

Dees v. California State University, Hayward
33 F. Supp.2d 1190 (N.D. Cal. 1998) ....................................................... 15

10

Dorian v. Harich Tahoe Development
1996 WL 925859, *2 (N.D. Cal. 1996) ...................................................... 17

11

12

Dorsey v. District of Columbia
917 A.2d 639 (D.C. Cir. 2007) .................................................................. 12

13

14

Durning v. First Boston Corp.
(9th Cir. 1987) 815 F.2d 1265................................................................... 11

15

Federal Deposit Ins. Corp. v. Nichols
885 F.2d 633 (9th Cir. 1989)..................................................................... 11

16

17

Grauberger v. St. Francis Hospital
169 F.Supp.2d 1172 (N.D. Cal. 2001) ...................................................... 15

18

19

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
896 F.2d 1542 (9th Cir. 1989).................................................................... 11

20

In re GlenFed, Inc. Securities Litigation
42 F.3d 1541 (9th Cir. 1994)..................................................................... 19

21

22

In re Worlds of Wonder Sec. Litig.
694 F.Supp. 1427 (N.D. Cal. 1988) .......................................................... 17

23

24

Jenkins v. MCI Telecommunications Corp.
973 F.Supp. 1133, fn 10. (C.D. Cal. 1997) ............................................... 20

25

Kayport Package Exp., Inc.
885 F.2d 531 (9th Cir. 1989)..................................................................... 17

26

27

Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.
940 F.2d 397 (9th Cir. 1991)................................................................. 11, 17

28

Lustiger v. United States
        386 F.2d 132 (9th Cir. 1967)...................................................................15

Marketing West, Inc. v. Sanyo Fisher (USA) Corp.
        (1992) 6 Cal.App.4th 603, 612-613 ...............................................19

Mazur v. eBay Inc.
        2008 WL 618988, *13 (N.D. Cal. 2008) .......................................18

McNally v. United States
        483 U.S. 350 (1987)........................................................................13

Miller v. Yokohama Tire Corp.
        358 F.3d 616 (9th Cir. 2004)..........................................................15

Mobley v. Los Angeles Unified School Dist.
        90 Cal.App.4th 1221 (2001) ...........................................................20

Neder v. United States
        527 U.S. 1, 21-25 (1999).................................................................13

Neibel v. Trans World Assurance Co.
        108 F.3d 1123 (9th Cir. 1997)........................................................18

Odom v. Microsoft Corp.
        486 F.3d 541 (9th Cir. 2007)..........................................................11

O'Malley v. New York City Transit Authority
        896 F.2d 704 (2nd Cir. 1990).........................................................17

Parr v. United States
        363 U.S. 370 (1960)..................................................................15, 16

Plaza Hollister Ltd. Partnership v. County of San Benito
        (1999) 72 Cal.App.4th 1 .................................................................11

Schmuck v. United States
        489 U.S. 705 (1989)........................................................................13

Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.
        806 F.2d 1393 (9th Cir. 1986)...................................................13, 17

Steel Vo. v. Citizens for a Better Environment
        (1998) 523 U.S. 83 .........................................................................21

Streck v. Peters
         855 F.Supp. 1156 (D.Hawai'i 1994) ..............................................17

Sun Sav. & Loan Ass'n v. Dierdorff
        825 F.2d 187 (9th Cir. 1987)..........................................................13

U.S. v. Curry
    681 F.2d 406 (5th Cir. 1982)...................................................................................16

U.S. v. Gaskins
    (1988) 849 F.2d 454.............................................................................................20

Unterberger v. Red Bull North America, Inc.
    162 Cal.App.4th 414 (2008) ...............................................................................18

Zatkin v. Primuth
    551 F.Supp. 39 (S.D. Cal. 1982).........................................................................19

**Statutes**

18 U.S.C.
    §1341................................................................................................................13, 15

18 U.S.C.
    §1343................................................................................................................13, 16

18 U.S.C.
    §1503................................................................................................................16, 17

18 U.S.C.
    §1512....................................................................................................................16

18 U.S.C.
    §1513....................................................................................................................17

18 U.S.C.
    §1961(1)................................................................................................................16

18 U.S.C.
    §1961(1)(A) ..........................................................................................................17

18 U.S.C.
    §1961(1)(B)......................................................................................................13, 17

18 U.S.C.
    §1962(c) ................................................................................................................13

California Vehicle Code
    §22507...............................................................................................................6, 14

California Vehicle Code
    §22500.....................................................................................................................7

California Vehicle Code
    §22658................................................................................................................7, 14

California Vehicle Code
        §40200 ................................................................................................ 6, 12, 14

California Vehicle Code
        §40200.3 ...................................................................................................... 6

California Vehicle Code
        §40200.4 ...................................................................................................... 6

California Vehicle Code
        §40200.5 ................................................................................................ 6, 14

California Vehicle Code
        §40200.6 ................................................................................................ 6, 14

California Vehicle Code
        §40206(a) ............................................................................................. 14, 16

California Vehicle Code
        §40206(b) ......................................................................................... 7, 14, 16

California Vehicle Code
        §40215(c)(3) ................................................................................................ 12

California Vehicle Code
        §40230(a) .................................................................................................... 12

California Vehicle Code
        §4760 .......................................................................................................... 14

California Vehicle Code
        §5204 ............................................................................................................ 7

Oakland Muncipal Code
        §10.32.200 .................................................................................................. 14

Oakland Municipal Code
        §10.08.080 .................................................................................................. 14

Oakland Municipal Code
        §10.32.190 .............................................................................................. 7, 14

Oakland Municipal Code
        §10.48.010 .................................................................................................... 7

## **Other Authorities**

Federal Rules of Civil Procedure
        12(b)(1) ...................................................................................... 3, 11, 20, 21

Federal Rules of Civil Procedure
    12(b)(6) ............................................................................................................ 3, 10, 11

Federal Rules of Civil Procedure
    9(b) ................................................................................................................ 3, 11, 17, 19

Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D
    §1357 (1990) ............................................................................................................. 10

1    **I.**     **INTRODUCTION**

2

3        Pro Se Plaintiffs Harjit Bhambra and Lakhbir Bhambra ("Plaintiffs") allege they are

4    victims of a purported fraudulent parking ticket scheme supposedly conjured up by the City of

5    Oakland, a municipal corporation acting by and through its Board of Port Commissioners

6    ("Port" or "Port of Oakland") and several Port employees (collectively, the "Port Defendants");

7    the City of Oakland ("City") and several City officials and City employees (collectively, the

8    "City Defendants"); and Ampco System Parking ("Ampco") and several Ampco employees

9    (collectively, the "Ampco Defendants").

10        The Port Defendants and the City Defendants filed Motions to Dismiss Plaintiffs'

11    Complaint.  Those motions were scheduled to be heard on March 20, 2009.  On the eve of the

12    hearing, Plaintiffs filed a Motion for Leave to File a First Amended Complaint ("FAC"),

13    seeking to render the pending Motions to Dismiss moot.  Due to Plaintiffs' eleventh-hour filing,

14    the March 20, 2009 hearing remained on calendar.  At that hearing, the Court made a threshold

15    determination that "the Court will proceed with the instant motions because the amendment

16    failed to cure the fatal defects pointed out by Defendants."[1]  Accordingly, all of the arguments

17    in the pending Motions to Dismiss were deemed to apply equally to the FAC.[2]

18        On March 23, 2009, this Court issued an Order (the "Order") granting, without leave to

19    amend, the Motions to Dismiss by the Port Defendants and the City Defendants.  The Order was

20    expressly based on the following grounds:

21

22        • Plaintiffs failed to exhaust their administrative remedies;

23        • Plaintiffs failed to state a cognizable RICO claim;

24        • Plaintiffs failed to state a RICO conspiracy claim; and

25    _____
      [1]  March 23, 2009 Order of Dismissal and Denying Sanctions, p. 6, lns. 12-14.

26    [2]  Technically, the FAC is not and cannot be the operative pleading as to the Ampco Defendants, as each of them
      has already answered the original Complaint and Plaintiffs have not been granted leave to file the FAC.

27    Nonetheless, based on the Court's determination that all of the fatal defects in the original Complaint persist in the
      FAC, all of the arguments and authorities in the Ampco Defendants' present Motion (as well as the rulings in the

28    Court's March 23, 2009 Order) apply equally to the claims alleged in the original Complaint and those in the FAC.

- Plaintiffs' remaining claims arise wholly under state law.

Each of these grounds stated in the Court's Order applies equally to the Ampco Defendants,[3] and dismissal of the Ampco Defendants should therefore have been little more than a ministerial exercise.  Accordingly, on March 26, 2009, counsel for the Ampco Defendants prepared and sent Plaintiffs a letter, enclosing a Stipulation of Dismissal, asking them to sign and return the Stipulation for filing with the Court.[4]  Plaintiffs responded the next day, refusing to do so.[5]  As a result, Plaintiffs have forced the Ampco Defendants to bring the present Motion to Dismiss.  As a further result of Plaintiffs' refusal to voluntarily dismiss their claims against the Ampco Defendants (notwithstanding that all of these claims have effectively been adjudicated), substantial judicial and party resources will be wasted in having to consider this matter.

## II.   SUMMARY OF ARGUMENT

Plaintiffs' original Complaint ("Complaint") and FAC purport to allege claims for relief under RICO, along with state law claims for fraud, fraudulent concealment, and aiding and abetting.[6]  At its core, the meandering and, at times, unintelligible Complaint essentially alleges that the Port, City, and Ampco Defendants issued parking citations to vehicles leased by Plaintiffs' companies "on private property without any valid authority or credentials."  See Compl. ¶¶128, 129.  The Complaint further alleges that after issuing these supposedly fraudulent citations, the City sent demands for payment to Plaintiffs through the mail.  This

---

[3] The Court ruled that "RICO Suits Against Public Entities and Public Employees are Impermissible" (a ground that would not apply to the Ampco Defendants), but the Court's Order also makes it clear that Plaintiffs' RICO claims are fatally defective due to the "Failure to Plead a Predicate Offense" - - a basis which certainly applies to the Ampco Defendants.

[4] Declaration of Alan G. Ross ("Ross Decl."), filed concurrently herewith, ¶ 2, Exh. "A."

[5] Ross Decl., ¶ 3, Exh. "B."

[6] The Complaint also purports to allege the following "causes of action":  Seventh Cause of Action for "Actual Damages"; Eighth Cause of Action for "Veasely Damages"; Ninth Cause of Action for "Treble Damages  under RICO"; and Tenth Cause of Action for "Defendants' Liability to the Crime."  Each of these purported claims is improper and should be stricken, as none of them constitutes a cognizable claim under applicable law.

1   alleged conduct—and little more—purportedly serves as the "predicate acts" upon which

2   Plaintiffs base their RICO and state law claims and for which they seek an outrageous $780

3   million in damages.

4       Plaintiffs' Complaint, in its entirety, is completely without merit and must be dismissed.

5   First, Plaintiffs should not even be allowed to bring their claims in federal court as they have

6   clearly failed to exhaust their administrative remedies.  California law indisputably provides for

7   an administrative procedure by which to contest disputed parking citations.  Plaintiffs' failure to

8   exhaust that remedy bars them from now seeking judicial review.

9       The RICO and state law claims are also substantively defective.  Nothing about the

10  allegations in the Complaint comes close to stating a federal RICO claim.  As clearly evidenced

11  by the Exhibits to the Complaint ("Compl. Ex.") and those attached to the Ampco Defendants'

12  Request for Judicial Notice ("RJN"), Ampco, the Port, and their respective employees had

13  proper legal authority pursuant to the California Vehicle Code, the Oakland Municipal Code,

14  and the Oakland City Charter to issue citations to vehicles parked illegally on Port property.

15  Plaintiffs have failed to allege all of the necessary elements of such a claim.  The RICO claim

16  and the RICO conspiracy claim must be dismissed.

17      Equally frivolous are Plaintiffs' state law claims, all of which are premised on the

18  erroneous assumption—made demonstrably false by the Exhibits to the Complaint and the

19  documents attached to the RJN—that any of the Defendants misrepresented their authority to

20  issue parking citations for illegally-parked vehicles.  The state law claims suffer from a number

21  of other fatal defects, as Plaintiffs have not pled—and indeed cannot plead—most, if not all, of

22  the elements necessary to state a claim against the Ampco Defendants.

23      Plaintiffs should not be allowed to transform the federal courts into a general venue for

24  ordinary disputes over parking tickets.  Pursuant to Federal Rules of Civil Procedure 9(b),

25  12(b)(1), and 12(b)(6), the Complaint should be dismissed.

26

27

28

III.    **FACTUAL BACKGROUND**[7]

    A.    **The Parties**

        1.    **Plaintiffs**

Plaintiff Harjit Bhambra owns Exel Intermodal (dba Bay Area Transportation), a transportation business, which, until late December 2008, was located at 2565 Buna Street, in Oakland.[8]  Compl. ¶2.  Plaintiff Lakhbir Bhambra owns Metro Logistic, also a transportation business, and also located at 2565 Buna Street.  Compl. ¶3.  2565 Buna Street is Port property.  Compl. ¶3; RJN Exs. F, G.

        2.    **The Port Defendants**

Established in 1927, the Port is an independent department of the City of Oakland.  See Article VII of Oakland City Charter, Compl. Ex. N.  The exclusive control and management of the Port Department is vested in the Board of Port Commissioners ("Board").  Id.  At the time of the filing of the Complaint, the President of the Board was Darlene Ayers-Johnson ("Ayers-Johnson").  Compl. ¶8.  The Port's Executive Director is Omar Benjamin ("Benjamin").  Compl. ¶11.  The Port Attorney's Office, a department within the Port, is headed by David Alexander ("Alexander").  Compl. ¶25.  Marsha Peterson and Mary Richardson ("Richardson") are Deputy Port Attorneys.  Compl. ¶¶25, 27, 29.

Within the Port's Maritime Division, the Wharfingers are responsible for monitoring Port and terminal operations activities and enforcing lease terms for use of Port facilities, buildings, structures, land and water areas.  See Wharfinger Job Description, Compl. Ex. K.  Chief Wharfinger Chris Peterson has first line supervisory responsibilities.  Id.  He supervises four full-time Wharfingers, including Robert Cathey ("Cathey") and Richard Taylor ("Taylor").  Among other things, the Wharfingers are responsible for "enforc[ing]… applicable City of Oakland Traffic Code provisions…and issue citations for OTC violations as appropriate."  Id.

---

[7] Although the Ampco Defendants dispute many of the facts alleged in the Complaint, the following summary assumes their truth for purposes of this motion only, except where contradicted by documents attached to the Complaint or by judicially noticeable facts and relevant statutory authority.

[8] Exel Intermodal was the defendant in an Unlawful Detainer action filed by the Port in Alameda Superior Court. Following judgment in favor of the Port, Exel Intermodal was evicted from the property on December 28, 2008. RJN Ex. G.  Harjit Bhambra has since filed a Wrongful Eviction action against the Port and its attorneys.  Id.

AMPCO DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

1   Cathey and Taylor have taken the City's Oath of Office authorizing them to "perform the job

2   duties of the office of Wharfinger."  See Cathey Oath of Office, Compl. Ex. K; RJN Ex. A.

3               **3.      The City Defendants**

4               The City Defendants include the City, Mayor Ronald Dellums, Chief of Police Wayne

5   Tucker ("Tucker"), the Office of the City Attorney, City Attorney John Russo, Supervising

6   Deputy City Attorney Mark Morodami, Deputy City Attorney Susan Mosk; the City's Director,

7   Finance &. Management Agency William E. Noland ("Noland"), the City's Manager of Parking

8   Enforcement Division Francine Larkfirth-Thompson ("Larkfirth-Thompson"), City Parking

9   Enforcement Division Supervisor Ira Christian ("Christian"), City Parking Enforcement

10  Division Supervisor II Kenneth Rayford ("Rayford"), and City Parking Enforcement Division

11  Supervisor II Ronald Abernathy ("Abernathy").  Compl. ¶¶31-58.

12              The crux of the allegations against the City Defendants is that they "manufactured"

13  parking citation booklets that were then sent to the Port and Ampco Defendants to issue to

14  vehicles (including those allegedly belonging to Plaintiffs' companies) that were parked illegally

15  on City property (including in areas operated by the Port).  Compl. ¶76.  Plaintiffs allege that the

16  City "manufactured and assigned" these citation booklets knowing that the Ampco and Port

17  Defendants purportedly lacked "proper authority" to issue citations.  Id.  According to the

18  Complaint, the City, upon receiving notice of the violations, processed the citations and notified

19  the California Department of Motor Vehicles (DMV) of unpaid fines.  Id.  This alleged

20  "widespread scheme" was, according to Plaintiffs, designed "to collect thousands or hundreds of

21  thousands, if not millions of dollars from the Public-at-large."  Compl. ¶79.

22              The majority of the City Defendants (including the City Attorneys, Tucker, Noland,

23  Larkfirth-Thomspon, Rayford, Abernathy, and Christian) are involved only insofar as they

24  corresponded with Plaintiffs regarding their demand for an investigation and/or because they

25  allegedly failed to investigate Plaintiffs' complaints.  Compl. ¶¶88, 90-92, 94-95, 97-100.

26              **4.      The Ampco Defendants**

27              The Ampco Defendants include Ampco, Ampco's President Richard Kindorf, and

28  Ampco employees Alfred Weiland ("Weiland") and Louis Vela.  Compl. ¶¶59-68.  Ampco

operates a trucking lot on Port property at 2498 West 16th Street in Oakland.  Compl. Exs. C, K.

On or about October 26, 2007, Plaintiff Harjit Bhambra signed a Parking Agreement with Ampco on behalf of his company Exel Intermodal.  Compl. Ex. C.  The Parking Agreement expressly provides that use of the trucking lot is "for storage of the [transportation] Equipment only."  Id.  The Agreement further states that "User agrees to follow yard procedure and rules" and that "Violators shall be issued citations."  Id.

Both the Port and the City have confirmed to Plaintiffs the authority of Ampco employees to issue tickets on Port property.  Compl. Exs. B (letter from Port dated May 29, 2008) and N (letter from City Attorney's office dated September 30, 2008).

**B.**     **The Authority of the City, Port and Ampco to Issue Parking Citations**

The authority of the City and the Port to issue and process parking citations and to contract with private entities (such as Ampco) to issue citations is derived from the California Vehicle Code, the City of Oakland Municipal Code, and the Oakland City Charter.[9]

**1.**     **California Vehicle Code**

California Vehicle Code section 22507 states, in pertinent part, "Local authorities may, by ordinance or resolution, prohibit or restrict the...parking ...of vehicles...on certain streets or highways, or portions thereof, during all or certain hours of the day."

California Vehicle Code sections 40200 et seq. distinguishes between the entity that issues citations—"issuing agency"—and the entity that processes the notices of violations— "processing agency."  See Cal. Veh. Code, §§40200.4-40200.6  Section 40200.5 provides that an "issuing agency may elect to contract with the county, with a private vendor, or with any other city or county processing agency…for the processing of parking violations and notices of delinquent parking violations…"  Per section 40200.6, "[i]f a contract is entered pursuant to Section 40200.5…processing agency means the contracting party responsible for the processing of the notices of parking violations and notices of delinquent parking violations."  Pursuant to section §40200.3, "All parking penalties collected by the processing agency, which may be the

---

[9] For the benefit of the Court, Defendants have attached relevant sections of the California Vehicle Code, the Oakland Municipal Code, and the Oakland City Charter  to the RJN.

1  issuing agency,…shall be deposited to the account of the issuing agency…."

2  　　　　The Vehicle Code also sets forth the procedure by which the owner of a vehicle receives

3  notice of a parking citation and notice of a delinquent violation, including that "Delivery of a

4  notice of a delinquent parking violation…may be made by personal service or <u>by first-class mail</u>

5  addressed to the registered owner."  Cal. Veh. Code §40206(b) (emphasis added).

6  　　　　　　　　**2.**　　　**City of Oakland Municipal Code**

7  　　　　In accordance with the authority granted to it by the State, the City of Oakland has

8  adopted a series of codes and ordinances that govern the stopping, standing, and parking of

9  vehicles.  See Oakland Municipal Code ("OMC") attached as RJN Ex. B.  Included in the OMC

10  at Title 10: Vehicles and Traffic, section 10.48.010, are the following provisions:[10]

| Oakland Traffic Code Section | Description | Fine |
|---|---|---|
| 10.16.070 | Parking on private property | $35.00 |
| 10.28.250 | No parking any time | $35.00 |
| 10.280.040 | Parking over eighteen inches of the left-hand curb | $35.00 |

14  　　　　The City vests the authority to regulate parking at the Port to the Port Commissioners

15  through Oakland Municipal Code section 10.32.190.  The Commissioners can limit parking and

16  access within the Port, and "[w]hen provided by resolution of the Board of Port Commissioners

17  and appropriate signs are in place and visible giving notice thereof, no person shall park any

18  vehicle at any time on any roadway or other areas so indicated."  OMC §10.32.190.[11]

19  　　　　**C.**　　　**The Alleged Racketeering Acts**

20  　　　　Plaintiffs' claims are premised on 255 alleged "Racketeering Acts" presented in the

21  Appendix to the Complaint.[12]  The Racketeering Acts are summarized as follows.

22  　　　　　　　　**1.**　　　**The Parking Citations Issued by Port Employees Cathey,**
23  　　　　　　　　　　　　**Taylor, and Granger (Alleged Racketeering Act Nos. 2-7, 9-11,**
　　　　　　　　　　　　**14, 17-32, 35-101)**

24  　　　　The vast majority of the purported Racketeering Acts alleged in the Complaint and in the

---

[10] All citations issued to Plaintiffs (and attached to the Complaint) were issued pursuant to these three OMC sections and/or California Vehicle Code sections 22500 (general statute prohibiting parking in specified areas), 22658 (authorizing removal of vehicle from private property), and 5204 (requiring registration tabs).  Compl. Ex. P.

[11] The authority of the City to regulate parking is also vested in the Port through the City Charter.  Compl. Ex. N.

[12] Although the Appendix to the Complaint numbers 254 such Racketeering Acts, in fact, Plaintiffs have misnumbered the acts and included two Racketeering Acts No. 73, bring the total number to 255.

Appendix (Alleged Racketeering Act Nos. 2-7, 10, 14, 17-32, 35-57, 59-67, 72, 73(2)-82, 85-100) concern approximately one hundred parking citations issued by Cathey in his capacity as Wharfinger.  The Complaint and Appendix allege that, from August 2007 to September 2008, Cathey issued parking citations to Plaintiffs' "short-term lease equipment" parked at one of four locations: Maritime Street, on Chung King Street, and at Berths 9 and 10.[13]  All four of these locations are, contrary to the allegations in the Complaint, City or Port property.  See RJN Ex. F.  Plaintiffs generally allege that Cathey "knowingly, willfully and intentionally advertise[d] that Defendant CATHEY is an officer of Defendant CITY" and that "CATHEY did cause to be sent and delivered via the UNITED STATES POSTAL SERVICE, the original citations to Defendant CITY, for the collection of fines (and any subsequent penalties) to leased equipment owners (lessors) located throughout the United States."  Compl. ¶¶14-16, 155-156; Compl. App. ¶¶2-7, 10, 14, 17-32, 35-57, 59-67, 72, 73(2)-82, 85-100.

Plaintiffs make virtually identical claims against other Port employees.  Defendant Taylor, another Wharfinger—either on his own or with Cathey—issued ten citations between October 2007 and August 2008.  Compl. App. ¶¶58, 68-71, 73(1), 83, 84.  Plaintiffs also allege that Wharfinger Granger issued one citation in August 2008.  Compl. App. ¶101.

### 2.   The Impoundment of Plaintiffs' Flatbed Trailer by Defendant Cathey (Alleged Racketeering Act Nos. 1 and 102)

Racketeering Act Nos. 1 and 102 generally allege that on August 28, 2007, Cathey "provided false information in the police report which he signed, that…[Plaintiffs' flatbed] trailer was parked on private property and further stated that had [sic] the authority to tow vehicles from Defendant CITY Streets without an official badge or valid authority from Defendant CITY."  Compl. App. ¶¶1, 102.  Plaintiffs further allege that the Oakland Police Department impounded the trailer and that Cathey and Oakland Police Officer Jeffrey Thompson, who allegedly towed the trailer, have a "close personal relationship."  Id.

### 3.   The Parking Citations Issued by Weiland (Alleged

---

[13] It is unclear from the Complaint whether the vehicles cited by the Wharfingers were leased by Plaintiffs or by their companies.  The Notices attached as Compl. Ex. P indicate that most of the citations were leased by Bay Area Logistics, the former dba of Harjit Bhambra's company Exel Intermodal.  Compl. ¶2.

**Racketeering Act Nos. 12, 14, 33, 34, 218, 219)**[14]

The Complaint and Appendix allege that Ampco Defendant Weiland issued two citations to "plaintiff's short-term lease equipment" in March 2008.  Compl. App. ¶¶12, 14.  Plaintiffs also allege that, in June 2008, Weiland issued one citation to a Lexis and another to "the public at large."  Compl. App. ¶33, 34.  Both June citations were "revoked" by the City.  Compl. ¶98.  All four citations signed by Weiland were issued at the Ampco-operated trucking lot at 2498 16th Street.  Compl. App. ¶¶12, 14, 33, 34, 218, 219.  Plaintiffs allege that Weiland "received blank parking citation booklets directly from City employees and co-conspirators" and, with respect to the two June citations, that he "knowingly, willfully and intentionally caused to be sent and delivered as a routine business practice via UNITED STATES POSTAL SERVICE, the original citations to Defendant CITY, for the collection of fines (and any subsequent penalties) to leased equipment owners (lessors) located throughout the United States."  Id.

**4.    The City's Processing of the Citations (Alleged Racketeering Act Nos. 103-202)**

Racketeering Act Nos. 103-202 all allege the same basic facts: from September 2007 to September 2008, the City processed citations issued by Cathey, Taylor, and Weiland "without verifying the information on the citation[s]" and Cathey, Taylor and/or Weiland "knowingly, willfully and intentionally caused to be sent and delivered, as a routine business practice, the citation[s] via the UNITED STATES POSTAL SERVICE," to the City.

**5.    The Remaining Alleged Racketeering Acts Involving the Port Defendants (Nos. 8, 235-237, 239, 244-254)**

Plaintiffs make additional cursory and vague allegations regarding purported conduct by Defendants Chris Peterson, Ayers-Johnson, Benjamin, and the Port Attorneys.

**(a)    Chris Peterson**

Plaintiffs spuriously and without any factual basis allege that Chris Peterson "create[d] what appears to be a back-dated letter to create the alleged authority covering WEILAND's

---

[14] Alleged Racketeering Act Nos. 12 and 14 are virtually identical to Alleged Act Nos. 218 and 219.

1    involvement" and sent the letter "via wire to the Defendant CITY ATTORNEY."  Compl. ¶¶21-

2    22; Compl. App. ¶¶235, 237.  Plaintiffs also allege that Chris Peterson "willfully, unlawfully

3    and knowingly allowed its wharfingers to write official parking citations on Defendant CITY

4    Streets and receive blank Defendant CITY Parking Citation booklets from Defendant CITY

5    corrupt employees to threaten plaintiffs and public at large without any badge..."  Compl. ¶¶159-

6    160; Compl. App. ¶236.

7                            **(b)      Ayers-Johnson and Benjamin**

8           Without averring any specific facts, Plaintiffs allege that Defendants Ayers-Johnson and

9    Benjamin permitted the Wharfingers to receive blank citation booklets from the CITY and to

10   collect fines and penalties "from lease-equipment owners throughout the United States to further

11   generate profits for Defendant CITY."  Compl. ¶¶8-13, 151-154; Compl. App. ¶¶245-246.

12                           **(c)      The Port Attorneys**

13          Again without any details, Plaintiffs allege that Port Attorneys Alexander, Marsha

14   Peterson, and Richardson "cause[d] to be sent and delivered via the UNITED STATES

15   POSTAL SERVICE, letters addressed separately to Plaintiff Harjit Bhambra containing false,

16   misleading and/or fraudulent information about the valid authority and official badge allegedly

17   possessed by Defendant CATHEY."  Compl. ¶¶23-30, 161-171; Compl. App. ¶¶249-254.

18   Plaintiffs further allege that the Port Attorneys failed to investigate Plaintiffs' complaints.  Id.

19

20   **IV.    ARGUMENT**

21          **A.      Legal Standards**

22                  **1.      Federal Rule of Civil Procedure 12(b)(6)**

23          Rule 12(b)(6) contemplates dismissal of a complaint, or any cause of action, if it fails to

24   state a claim.  While allegations of a complaint are to be construed in favor of the pleader, those

25   allegations must be ones of well-plead facts.  The Court can and should ignore "legal

26   conclusions," "unwarranted inferences," and "unwarranted deductions," Wright & Miller,

27   FEDERAL PRACTICE & PROCEDURE: CIVIL 2D §1357, pp. 315-318 (1990).

28          In addition to the allegations of the complaint, a court may consider exhibits submitted

1  with the complaint, documents whose contents are alleged in the complaint when authenticity is

2  not questioned, and matters that may be judicially noticed.  Hal Roach Studios, Inc. v. Richard

3  Feiner & Co., 896 F.2d 1542, 1555, n. 19 (9th Cir. 1989).  The Court may disregard allegations

4  in the complaint if contradicted by facts established by reference to documents attached as

5  exhibits to the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

6  **2.**     **Federal Rule of Civil Procedure 9(b)**

7       Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with

8  particularity.  It provides: "In all averments of fraud ..., the circumstances constituting fraud ...

9  shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

10  person may be averred generally." Fed. R. Civ. P. 9(b).  "The pleader must state the time, place,

11  and specific content of the false representations as well as the identities of the parties to the

12  misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553-554 (9th Cir. 2007).

13       Rule 9(b) applies to allegations of fraud that purport to form the basis of a RICO claim.

14  Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).

15  **3.**     **Federal Rule of Civil Procedure 12(b)(1)**

16       Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter

17  jurisdiction. As with a rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion that

18  attacks the complaint on its face, the court must view only the well-pled factual allegations of

19  the complaint as true.  Federal Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 636 (9th Cir. 1989);

20  **B.**     **Plaintiffs' Complaint in Its Entirety Should Be Dismissed Because
       Plaintiffs Failed to Exhaust Their Administrative Remedies**

21

22       At the outset, the Complaint should be dismissed because Plaintiffs have failed to

23  exhaust their administrative remedies by not contesting the authority of the Defendants to issue

24  parking citations through statutorily-created administrative processes. "The doctrine of

25  exhaustion of administrative remedies provides that 'where an administrative remedy is provided

26  by statute, relief must be sought from the administrative body and this remedy exhausted before

27  the courts will act.'" Plaza Hollister Ltd. Partnership v. County of San Benito, 72 Cal.App.4th 1,

28  29-30 (1999).  The doctrine is "a fundamental rule of procedure laid down by courts of last

1 resort, followed under the doctrine of stare decisis, and binding upon all courts."  Id. at 30.

2          California Vehicle Code section 40200 et seq. sets forth the process for review of

3 contested citations: an initial review by the issuing agency; a subsequent "independent,

4 objective, fair, and impartial" administrative hearing (Cal. Veh. Code § 40215(c)(3)); and

5 review of the administrative hearing by "appeal to be heard by the ... municipal court, where the

6 same shall be heard de novo...." (Cal. Veh. Code, § 40230(a)).

7          Here, the citations issued to Plaintiffs (see Compl. Ex. P) contained clear-cut instructions

8 on how to contest them.[15]  Because Plaintiffs fail to allege that they contested the citations

9 through the administrative process afforded them in the California Vehicle Code, their

10 Complaint, in its entirety is barred.  See, e.g., Dorsey v. District of Columbia, 917 A.2d 639

11 (D.C. Cir. 2007) (Plaintiff's complaint about the issuance and adjudication of parking tickets

12 with hand-held devices barred because Plaintiff failed to exhaust administrative remedies).

13          Furthermore, even if Plaintiffs were to contest unsuccessfully the citations in municipal

14 court, they would have absolutely no recourse to a higher court and certainly not to federal

15 court.  The statutory scheme does not provide for further review of the municipal court decision.

16 Smith v. City of Los Angeles Dept. of Transportation, (1997) 59 Cal.App.4th Supp. 7.  In

17 Smith, the appellate department of the superior court concluded that it did not have jurisdiction

18 to hear an appeal from a municipal court ruling on a parking citation and "that the procedure for

19 review set forth in [Vehicle Code] section 40200 et seq. is the only procedure available to

20 contest a parking citation." (emphasis added).  In other words, Plaintiffs' sole remedy to contest

21 the citations was through the statutory administrative hearing and municipal court.  The federal

22 courts simply are not a proper forum to protest parking tickets.

23      **C.    Plaintiffs' First Claim for RICO Violation Should Be Dismissed**
       **Because Plaintiffs Fail to Allege Any Indictable Act**

24

25          Even if Plaintiffs were able to demonstrate that they had exhausted their administrative

26 remedies, their RICO claim and state law causes of action still fail to state a claim.

27 _____
[15] Several of the citations in Exhibit B state "You may contest this citation at the 'CONTESTING ADDRESS' in
28 person or by mail.  You have 21 calendar days from date of issuance or 14 calendar days from mailing of this
notice to contest.  For contesting information, call the 'CITATION INFORMATION' number."

1    Plaintiffs' first claim alleges a violation of 18 U.S.C. § 1962(c), predicated on purported

2  mail and wire fraud.  Compl. ¶¶224-228, 252-62.  "Liability under §1962(c) requires (1) the

3  conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sun Sav. & Loan

4  Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987).  "'Racketeering activity' is defined in 18

5  U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal

6  statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C.

7  § § 1343, which makes wire fraud a crime."  Schreiber Distrib. Co. v. Serv-Well Furniture Co.,

8  Inc., 806 F.2d 1393, 1399 (9th Cir. 1986).

9    Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to allege that

10  Defendants committed any underlying "indictable" offense.

11    **1.    Plaintiffs Have Not Alleged and Cannot Allege that**
         **Defendants Engaged in a Fraudulent Scheme Because**
12        **Defendants Made No Misrepresentations**

13    To make a claim for federal mail and wire fraud, Plaintiffs must adequately plead a

14  "fraudulent scheme."  Schmuck v. United States, 489 U.S. 705 (1989) (plaintiffs must prove

15  both use of mail and scheme to defraud).  In Neder v. United States, 527 U.S. 1, 21-25 (1999),

16  the Supreme Court underscored that the term "defraud" in the mail and wire fraud statutes is

17  given its established common law meaning.  See also BMW of North America, Inc. v. Gore, 517

18  U.S. 559, 579 (1996) ("[A]ctionable fraud requires a material misrepresentation or omission").

19  A fraudulent scheme involves using "dishonest methods or schemes and usually signifies the

20  deprivation of something of value by trick, deceit, chicanery or overreaching."  McNally v.

21  United States, 483 U.S. 350, 358 (1987), superseded by statute on other grounds.  Merely

22  asserting that Defendants made "misrepresentations," without alleging that any specific

23  representation was false or misleading, does not establish a "scheme."

24    Plaintiffs maintain that the Defendants "issued parking citations on private property

25  without any valid authority or credentials."  Compl. ¶6.  Plaintiffs further allege that Port

26  Defendants Cathey and Taylor "advertised, that [they are] working for the Defendant CITY and

27  [have] authority from the Defendant CITY to issue parking citations to the Public-at-large…"

28  Compl. ¶¶15, 18.  This "fraudulent activity," according to Plaintiffs, was consummated when

the Port Defendants "mail[ed] the citations and/or demands for payments (including penalties) via the UNITED STATES POSTAL SERVICE throughout the United States (including the state of California), to leased equipment owners (lessors)."   The primary flaw in all of these allegations is that none involved a plan or scheme to "defraud" Plaintiffs because **all of the statements allegedly made by the Defendants are true**:

- The Port, as a department of the City, has authority to issue citations to vehicles on Port property.  Cal. Veh. Code §§22507, 40200 et seq.; OMC §§10.08.080, 10.32.190, 10.32.200; see also Oakland City Charter Article VII, Compl. Ex. N.

- The Port, as a department of the City, has the authority to tow vehicles parked on Port property.  Id.  see also Cal. Veh. Code §22658.

- All Wharfingers (including Cathey and Taylor) have "valid authority [and] credentials" to issue citations on Port property.  Id.; see also Compl. Exs. K (Job Description and Cathey Oath of Office); RJN Ex. A (Taylor Oath of Office).

- The Port and the City have not only the right, but also the legal obligation, to send notices through the mail to those who receive parking citations.  Cal. Veh. Code §40206(a) (requiring delivery of notice of parking citation and demand for payment); Cal. Veh. Code §40206(b) (delivery of notice made by mail).

- The Port and the City have the right and the legal obligation to send demands for payment through the mail to those who receive parking citations.  Id.

- The Port and the City have the right and legal obligation to notify the DMV of unpaid citations.  Cal. Veh. Code, §§4760, 40220(a).

- The Port and the City have the right to vest the Ampco Defendants with authority to issue citations on Port property on the same forms used by the Oakland Police.  Cal. Veh. Code §§40200.5, 40200.6; OMC §§10.08.080, 10.32.200.

Plaintiffs cannot state a claim under RICO based on their patently _false_ belief that the Defendants did not have the authority to write parking citations.  In order to constitute a violation of RICO, the alleged conduct must be at least "in some respects false" or "fraudulently deceptive and misleading, exhibiting an intent and purpose to defraud."  Lustiger v. United

1   <u>States</u>, 386 F.2d 132, 137 (9th Cir. 1967).   "In other words, the racketeering activity must

2   amount to, or pose a threat of, continued <u>criminal</u> activity."  <u>Grauberger v. St. Francis Hospital</u>,

3   169 F.Supp.2d 1172, 1176 (N.D. Cal. 2001) (emphasis added).  Citing acts as a part of a RICO

4   pattern, which on the face of the pleadings are not indictable, is not sufficient.  <u>Dees v.</u>

5   <u>California State University, Hayward</u>, 33 F. Supp.2d 1190, 1202 (N.D. Cal. 1998) (RICO case

6   dismissed because Department of Labor's alleged mishandling of university employee's

7   discrimination complaint was not indictable and did not constitute "racketeering activity").

8       Here, not only have Plaintiffs failed to allege any false representations and/or an intent to

9   deceive, all of the conduct they have alleged is clearly <u>true</u> and, indeed, warranted by the law.

10   Without any alleged fraudulent purpose or intent behind Defendants' actions, Plaintiffs' claims

11   of mail and wire fraud cannot be sustained, and therefore the RICO claim must fail.

          **2.**     **Plaintiffs Have Failed to Allege a Violation of Mail Fraud**
                **Because the Alleged Mailings Were Made Pursuant to**
                <u>**California Law**</u>

14       In addition to proving that Defendants formed a scheme or artifice to defraud,

15   Plaintiffs—in order to allege a violation of mail fraud under 18 U.S.C. §1341—must also

16   demonstrate that Defendants "used the United States mails or caused a use of the United States

17   mails <u>in furtherance of the scheme</u>."  <u>Miller v. Yokohama Tire Corp.</u>, 358 F.3d 616, 620 (9th

18   Cir. 2004) (emphasis added).  However, a claim of mail fraud cannot be premised on "alleged

19   mailings made or caused to be made under the imperative command of duty imposed by state

20   law."  <u>Parr v. United States</u>, 363 U.S. 370, 391 (1960)

21       In <u>Parr</u>, a criminal case alleging a violation of 18 U.S.C. §1341, the Supreme Court held

22   that tax statements, checks in payment of taxes, and receipts of payments mailed by a school

23   board were not sent in furtherance of a scheme to defraud the school district of its revenue

24   because such mailings were "made or caused to be made under the imperative command of duty

25   imposed by state law."  <u>Parr</u>, 363 U.S. at 391.  This was so even if individuals "who are so

26   required to do the mailing…plan to steal, when or after received, some indefinite part of its

27   moneys."  <u>Id</u>.  The Court also held that the mail fraud claim failed because the mailings (notices

28   and checks) did not constitute "false pretenses and misrepresentations."  <u>Id</u>. at 392.

Here, as in <u>Parr</u>, the mailing of notices of citations and demands for payment was made pursuant to state law.  See Cal. Veh. Code §40206(a) (requiring delivery of notice of citation and demand for payment) and Cal. Veh. Code §40206(b) (delivery of notice made by mail).  In addition, the citations and demands for payment were completely truthful—they contained no "false pretenses" or "misrepresentations."  Indeed, Plaintiffs have not alleged that the mailings themselves were false.  Because the mailing of citations and demands for payment was completed in accordance with state law and because the mailings were not themselves false or fraudulent, they cannot, as a matter of law, have been in furtherance of the alleged conspiracy. <u>Parr v. U. S.</u> at 389-390; see also <u>U.S. v. Curry</u>, 681 F.2d 406, 412 (5th Cir. 1982) ("mailings of documents which are required by law to be mailed, and which are not themselves false and fraudulent, cannot be regarded as mailed for the purpose of executing a fraudulent scheme.")

### 3. Plaintiffs Have Failed to Allege Wire Fraud Because, Among Other Things, Plaintiffs Have Not Sufficiently Alleged <u>Interstate</u> Use of Wires

Although not the only defect in Plaintiffs' wire fraud allegations, perhaps the most obvious is their failure to allege the use of <u>interstate</u> wires in furtherance of the alleged scheme. Indeed, all of the parties are located and all of the alleged conduct occurred in Oakland.  A telephone call or use of telefax must be interstate to violate the wire fraud statute, 18 U.S.C. §1343.  <u>First Pacific Bancorp, Inc. v. Bro</u>, 847 F.2d 542, 547 (9th Cir. 1988) ("The allegation of wire fraud is also unsupported, since there is no evidence of interstate wire communication.").

### 4. Plaintiffs Have Failed to Allege Indictable Obstruction of Justice Because None of the Alleged Acts Interfered With <u>Federal Proceedings</u>

Plaintiffs also cursorily suggest that their RICO claims may be based on an alleged "obstruction of justice."  Compl. ¶¶229-231.  Even if true—which it is not—this allegation is insufficient to prove indictable obstruction of justice pursuant to RICO because Plaintiffs do not allege that Defendants obstructed federal proceedings or any of the other specified "obstruction of justice" predicates for a RICO claim.[16]  See <u>O'Malley v. New York City Transit Authority</u>,

---

[16] See 18 U.S.C. section 1961(1) (prescribing the indictable offenses for "obstruction of justice", including 18 U.S.C. section §1503 (obstruction of justice in federal proceeding), section 1510 (obstruction of criminal investigations), section 1511 (obstruction of State or local law enforcement by gambling operation), section §1512

896 F.2d 704, 708 (2nd Cir. 1990) (in defining "racketeering activity", Congress not only included obstruction of justice by reference to 18 U.S.C. §1503,, which is expressly limited to federal court proceedings, §1961(1)(B); but it also failed to include obstruction of justice as one of the generic state law crimes under §1961(1)(A)); Streck v. Peters, 855 F.Supp. 1156, 1162 (D.Hawaii 1994) (failure to allege perjury in federal proceeding precluded using obstruction of justice as predicate offense).

> **5.      The RICO Claims Against the Ampco Defendants Must Be Dismissed Because <u>Plaintiffs Fail to Allege with Specificity the Underlying Fraud</u>**

The particularity requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims.  Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986). This pleading rule applies to <u>each defendant</u> alleged to have engaged in the purported fraud. Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). "A RICO pleading must attribute specific conduct to each defendant in the scheme." Dorian v. Harich Tahoe Development, 1996 WL 925859, *2 (N.D. Cal. 1996).  "Allegations based on 'information and belief' do not satisfy the particularity requirement of Fed.R.Civ.P. 9(b)…" In re Worlds of Wonder Sec. Litig., 694 F.Supp. 1427, 1432-33 (N.D. Cal. 1988).

Here, as discussed more fully above, Plaintiffs' claims against the individual Ampco Defendants are based on nothing more than cursory allegations.  The Complaint contains no dates or times of the alleged acts and otherwise fails to attribute specific conduct to each of these Defendants.  Furthermore, most of the general allegations involving these individuals are, according to the Complaint, based on "information and belief."  Compl. ¶¶151, 153,161, 163, 166, 169.  Absent the requisite specificity, pursuant to Rule 9(b), Plaintiffs' RICO claim against these individuals must be dismissed.  Comwest, Inc. v. American Operator Services, Inc., 765 F.Supp. 1467, 1476 (C.D. Cal. 1991) (dismissing RICO claim for failure "to plead the time, date, place, and content of the alleged misrepresentations"); see also Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989).

---

(tampering with a witness, victim, or an informant, and section §1513 (retaliating against a witness, victim, or an informant)).

AMPCO DEFENDANTS' MOTION TO DISMISS / CASE NO.: C08-05326-CRB

1

**D.**    **Plaintiff's Second Cause of Action for RICO Conspiracy Must Be Dismissed Because Plaintiffs Have Failed to Adequately Plead a <u>Substantive Violation of RICO</u>**

2

3        In order to state a viable claim for conspiracy in violation of section 1962(d), a plaintiff

4  must allege either an agreement that is a substantive violation of RICO or that defendants agreed

5  to commit, or participated in, a violation of two predicate offenses. <u>Baumer v. Pachl, 8 F.3d</u>

6  <u>1341, 1346 (9th Cir. 1993)</u>.  "[I]f the section 1962(c) claim does not state an action upon which

7  relief could ever be granted, regardless of the evidence, then the section 1962(d) claim cannot be

8  entertained."  <u>Neibel v. Trans World Assurance Co.</u>, 108 F.3d 1123, 1127 (9th Cir. 1997).

9        Here, as discussed above, Plaintiffs have not adequately plead and cannot adequately

10  plead a substantive violation of RICO.  Even if Plaintiffs properly claimed that Defendants

11  agreed to be a part of an enterprise, their failure to allege substantive violations precludes their

12  claim that there was a conspiracy to violate RICO.

13       **E.**    **<u>Plaintiffs' State Law Claims Fail</u>**

14        Plaintiffs' common law claims against the Ampco Defendants—(1) fraud and

15  misrepresentation; (2) concealment; and (3) aiding and abetting—are also fatally defective.

16        **1.**    **<u>Plaintiffs Have Not Stated a Claim for Common Law Fraud</u>**

17        Even assuming the statutory immunities did not apply, Plaintiffs' state law claims still

18  must dismissed as they have clearly failed to plead with specificity all of the requisite elements.

19  The elements of common law fraud are (1) a misrepresentation, (2) knowledge of falsity, (3)

20  intent to defraud, (4) justifiable reliance, and (5) damage.  See, e.g., <u>Unterberger v. Red Bull</u>

21  <u>North America, Inc.</u>, 162 Cal.App.4th 414, 423 (2008) As stated above, "[Rule] 9(b)] require[s]

22  plaintiff to plead with specificity the facts, circumstances, statements and misrepresentations

23  that constitute the fraud….The same level of specificity is required with respect to reliance."

24  <u>Mazur v. eBay Inc.</u>, 2008 WL 618988, *13 (N.D. Cal. 2008).

25        Here, Plaintiffs' allegations do not come close to the requisite specificity with which a

26  fraud claim must be alleged.  Instead, Plaintiffs simply allege that Defendants, in general, made

27  "multiple verbal and written representations to Plaintiffs regarding the investigation by the

28  Clerk's office" and that the "representations were material in nature and false."  Compl. ¶272.

1   With respect to the purported intent to defraud, Plaintiffs blithely allege, without any specificity,

2   that "Defendants intended that Plaintiffs act upon the multiple verbal and written, false and

3   material representations."  Compl. ¶275.  In terms of their alleged reliance, Plaintiffs simply

4   aver, again without any specificity, that they "relied on the multiple verbal and written

5   representations made by each of the Defendants in connection with the investigation."  Compl.

6   ¶¶ 277-278.  Without more, these allegations fail to satisfy the requirements of Rule 9(b).

7       More importantly, Plaintiffs' fraud claim must be dismissed because, as discussed above,

8   none of the alleged statements was untrue.  In order to constitute actionable fraud, "[t]he

9   statement in question must be false."  In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541,

10  1547-1548 (9th Cir. 1994).  As the Exhibits to the Complaint and to the RJN make clear, all of

11  the statements allegedly made by the Defendants with respect to its authority to issue citations

12  were and are undeniably true.  Plaintiffs' fraud claim is patently frivolous and should be

13  dismissed.

14              **2.      Plaintiffs Fail to State a Claim for Fraudulent Concealment**

15      The elements of a cause of action for fraudulent concealment are: "(1) the defendant

16  must have concealed or suppressed a material fact, (2) the defendant must have been under a

17  duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

18  suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

19  unaware of the fact and would not have acted as he did if he had known of the concealed or

20  suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

21  must have sustained damage."  Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6

22  Cal.App.4th 603, 612-613 (1992).  Rule 9(b)'s pleading requirements apply to claims of

23  fraudulent concealment.  Zatkin v. Primuth, 551 F.Supp. 39, 43 (S.D. Cal. 1982).

24      Again, Plaintiffs have failed to specifically alleged most, if not all, of the elements of a

25  concealment claim.  They have not identified any fact that was concealed; have not identified

26  any duty owed to them by the Port; have not specifically identified who had the requisite intent

27  to defraud; and have not alleged that they would have acted as they did had they known of the

28  purportedly concealed or suppressed fact.  The concealment claim should be dismissed.

1

### 3.   Plaintiffs Fail to State a Claim for Aiding and Abetting

The elements "under an aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." U.S. v. Gaskins, 849 F.2d 454, 459  (1988).  As discussed above, Plaintiffs have failed, at a minimum, to allege that a substantive underlying offense was committed.  Accordingly, their claim for aiding and abetting fails.

### F.   The Seventh, Eighth, Ninth and Tenth Causes of Action Are Not Recognized Claims And Should Be Dismissed

As the court explained in Jenkins v. MCI Telecommunications Corp., 973 F.Supp. 1133, fn 10. (C.D. Cal. 1997), "'causes of action' for punitive damages, declaratory relief, and injunctive relief are not causes of action [but] are remedies…[and] [t]herefore, they need not be addressed by this Court."  Here, Plaintiffs' Seventh Cause of Action (for "Actual Damages"); the Eighth Cause of Action (for "Veasely Damages"); and the Ninth Cause of Action ("For Treble Damages Under RICO") are not "causes of action" and should be dismissed.

Similarly unavailing is Plaintiffs' Tenth Cause of Action for "Defendants' Liability to the Crime."  In this purported claim, Plaintiffs simply reassert and then summarize their previous allegations and make blatant unsubstantiated references to alleged violations of state law (without actually referring to any specific state statute).  "Plaintiffs cannot simply cite a few facts and then invent causes of action to cover them."  Mobley v. Los Angeles Unified School Dist., 90 Cal.App.4th 1221, 1239-1240 (2001).  "Defendants' Liability to the Crime" is not a "recognized cause[] of action under California law."

### G.   Alternatively, The Complaint and Action Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Even if the Court decides that Plaintiffs' state law claims arguably have some merit— which they clearly do not—the entire Complaint should still be dismissed because the RICO claim is completely frivolous.  Under Federal Rule of Civil Procedure 12(b)(1), dismissals in

1  cases premised on federal question jurisdiction are allowed where the federal claim is (i)

2  immaterial and made solely for the purpose of obtaining jurisdiction, or (ii) wholly insubstantial

3  or frivolous, or (iii) so patently without merit that they require no meaningful consideration.

4  Steel Vo. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998); Bell v. Hood,  327 U.S.

5  678, 682-683 (1946).  Plaintiffs' Complaint meets each of the three categories that justify

6  dismissal for want of federal subject matter jurisdiction under Rule 12(b)(1).

7

8  **V.    CONCLUSION**

9         This lawsuit is patently frivolous, wholly unreasonable, and completely devoid of any

10  legal foundation.  Plaintiffs should not be allowed to proceed with a federal RICO claim simply

11  because they are upset about parking tickets.  The Court should not permit Plaintiffs to continue

12  wasting its own time and resources and the Ampco Defendants' time and resources by pursuing

13  this baseless and improper suit.  Just as this Court ruled in its March 23, 2009 Order with

14  respect to the City and Port Defendants, Plaintiffs' Complaint in its entirety should be dismissed

15  as to the Ampco Defendants without leave to amend.

16

17

18

19  Dated: April  4, 2009                          ROSS & WERSCHING LLP

20

21                                       By  _____

22                                           Alan G. Ross
                                            Attorneys for Defendants AMPCO SYSTEM
23                                          PARKING, RICHARD KINDORF, ALBERT
                                            WEILAND AND LOUIS VELA
24

25

26

27

28

## DECLARATION OF ALAN G. ROSS

I, Alan G. Ross, declare:

1.      I am an attorney duly licensed to practice in all of the courts of the State of California and am a Partner in the firm of Ross & Wersching LLP, attorneys of record for Defendants Ampco System Parking, Richard Kindorf, Alfred Weiland and Louis Vela (the "Ampco Defendants") in the above-captioned action.  The facts set forth herein are true of my own personal knowledge and if sworn, I could and would testify competently thereto.

2.      On March 26, 2009, I prepared and sent, via e-mail and Federal Express, a letter to Harjit Bhambra and Lakhbir Bhambra, the Plaintiffs in the above-captioned case.  In my letter, I referred to the Court's Order issued March 23, 2009 (the "Order") in this case that granted, without leave to amend, the motions to dismiss filed by the City of Oakland and the Port of Oakland.  Based on this order, I requested that Plaintiffs voluntarily dismiss the their action against the Ampco Defendants, and enclosed with my letter a Stipulation of Dismissal for them to sign and return to me so I could file it with the Court to effect this dismissal.  A true and correct copy of my March 26, 2009 letter is attached hereto as Exhibit "A."

3.      On March 27, 2009, I received a response, via e-mail, from Harjit Bhambra, indicating that Plaintiffs did not intend to voluntarily dismiss the Ampco Defendants and were in the process of appealing the Order to the Ninth Circuit.  A true and correct copy of this March 27, 2009 e-mail is attached hereto as Exhibit "B."

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed on April 4, 2009, at Costa Mesa, California.

_____
Alan G. Ross

# Exhibit A

# ROSS & WERSCHING LLP

## ATTORNEYS AT LAW

ALAN G. ROSS
agr@rossllp.com

March 26, 2009

**Via E-mail & Federal Express**

Harjit Bhambra
Lakhbir Bhambra
2565 Buna Street, Bldg. 90, Ste. #13
Oakland, CA 94607

Re:  *Bhambra v. Port of Oakland, et al.*
      U.S.D.C., N.D. Cal. Case No. C08-05326CRB

Gentlemen:

As you know, Judge Breyer issued an Order in your case on March 23, 2009 granting motions by the City of Oakland, the Port of Oakland and their related individual defendants to dismiss your First Amended Complaint ("FAC") without leave to amend. The detailed bases stated in the Order make it clear that the grounds for dismissing the FAC apply equally to defendants Ampco System Parking and its employees, Richard Kindorf, Alfred Weiland and Louis Vela (collectively, the "Ampco Defendants.") Specifically, the Court Order ruled that the FAC was barred because:

- Plaintiffs failed to exhaust their administrative remedies;

- the FAC fails to state a cognizable claim under RICO;

- the FAC fails to assert a valid Rico claim against any Defendant sued in his individual capacity;

- Plaintiffs' failure to state a RICO claim necessarily bars their claim for RICO conspiracy; and

- All claims supporting federal jurisdiction have been dismissed.

Under these circumstances, it is essentially a clerical matter to complete the dismissal of the Ampco Defendants. Accordingly, please sign the enclosed Stipulation of Dismissal and return it to me in the enclosed postage-paid envelope for filing with the Court.

EXHIBIT A

Harjit Bhambra
Lakhbir Bhambra
March 26, 2009
Page -2-

Although there is no legitimate reason for you to decline to sign and return the enclosed Stipulation, please be aware that if I do not receive the signed Stipulation back from you by the end of next week, I can only assume that you have chosen not to cooperate in this matter for some reason. If this turns out to be the case, the Ampco Defendants will have no choice but to file a Motion to Dismiss the FAC on the same grounds already adjudicated by the Court.

Based on the Court's March 23, 2009 Order, any opposition by you to a motion by the Ampco Defendants would necessarily contain defenses and other legal contentions that are not warranted by existing law or nonfrivolous arguments for extending, modifying or reversing existing law. As such, if you were to force such a motion by failing to promptly sign and return the enclosed Stipulation, you would almost certainly be subjecting yourselves to sanctions pursuant to Federal Rule of Civil Procedure 11.

Thank you in advance for your anticipated good faith and cooperation in this matter. Please do not hesitate to contact me with any questions.

Very truly yours,

Alan G. Ross
Ross & Wersching LLP

cc:    Richard T. White, Esq. (via email)
       Mark A. Delgado, Esq. (via email)
       Jannie L. Wong, Esq. (via email)
       Kandis Westmore, Esq. (via email)

Enclosure

1  ALAN G. ROSS, Bar No. 162859
   ERIC J. WERSCHING, Bar No. 229415
2  ROSS & WERSCHING LLP
   3151 Airway Ave., Suite S-1
3  Costa Mesa, CA 92626
   Telephone: (714) 444-3900
4  Facsimile: (714) 444-3901
   E-mail: agr@rossllp.com
5  **Attorneys for Defendant**
   **AMPCO SYSTEM PARKING, RICHARD**
6  **KINDORF, ALFRED WEILAND and LOUIS VELA**

7  HARJIT BHAMBRA
   LAKHBIR BHAMBRA
8  2565 Buna Street, Bldg. 90, Ste. #13
   Oakland, CA 94607
9  Telephone: 510-485-1963
   Telefax: 510-465-4240
10 **Plaintiffs**

11              **UNITED STATES DISTRICT COURT**

12       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**

13                                        | CASE NO.   C08-05326 CRB
   HARJIT BHAMBRA, LAKHBIR BHAMBRA,       |
14                                        | **STIPULATION OF DISMISSAL AS TO**
              Plaintiffs,                 | **DEFENDANTS:**
15                                        |
                                          | **(1) AMPCO SYSTEM PARKING;**
16         v.                             |
   PORT OF OAKLAND; DARLENE               | **(2) RICHARD KINDORF;**
17 AYERS-JOHNSON, PRESIDENT, PORT         |
   OF OAKLAND COMMISSION, Officially      | **(3) ALFRED WEILAND; and**
18 and individually; OMAR BENJAMIN;       |
   EXECUTIVE DIRECTOR, Officially and     | **(4) LOUIS VELA**
19 individually; ROBERT CATHEY;           |
   WHARFINGER, Officially and individually;|
20 CHRIS PETERSON; CHIEF                  |
   WHARFINGER, Officially and individually;|
21 OFFICE OF PORT OF OAKLAND             |
   ATTORNEY; DAVID ALEXANDER;            |
22 PORT OF OAKLAND AFITORNEY,            |
   Officially and individually; MARSHA   |
23 PETERSON; PORT OF OAKLAND            |
   ATTORNEY, Officially and individually;|
24 MARY RICHARDSON, PORT OF             |
   OAKLAND ATTORNEY, Officially and      |
25 individually; RICHARD TAYLOR,         |
   WHARFINGER, Officially and individually;|
26 CITY OF OAKLAND, a Municipal          |
   Corporation; RONALD DELLUMS,          |
27 MAYOR, CITY OF OAKLAND, Officially    |

28 ─────────────────────────────────────────────────────
        **STIPULATION OF DISMISSAL AS TO DEFENDANTS AMPCO, KINDORF, WEILAND AND VELA**
                          **CASE NO. C08-05326 CRB**

ROSS & WERSCHING LLP
ATTORNEYS AT LAW
3151 AIRWAY AVE., SUITE S-1
COSTA MESA, CA 92626
(714) 444-3900

ROSS & WERSCHING LLP
ATTORNEYS AT LAW
3151 AIRWAY AVE., SUITE S-1
COSTA MESA, CA 92626
(714) 444-3900

1  and individually; WAYNE TUCKER; CHIEF
2  OF POLICE, CITY OF OAKLAND,
   Officially and individually; OFFICE OF
3  THE CITY ATTORNEY, CITY OF
   OAKLAND; JOHN A. RUSSO,
4  ATTORNEY, CITY OF OAKLAND,
   Officially and individually; MARK
5  MORODOMI, ATTORNEY, CITY
   OF OAKLAND, Officially and individually;
6  SUSAN MOSK, ATTORNEY, CITY OF
   OAKLAND, Officially and individually;
7  WILLIAM NOLAND, DIRECTOR,
   FINANCE AND MANAGEMENT, CITY
8  OF OAKLAND, Officially and individually;
   FRANCINE LARKFIRTH-THOMPSON,
9  MANAGER, PARKING ENFORCEMENT
   DIVISION, CITY OF OAKLAND, Officially
10 and individually; IRA CHRISTIAN,
   SUPERVISOR, PARKING
11 ENFORCEMENT DIVISION, CITY OF
   OAKLAND, Officially and individually;
12 KENNETH RAYFORD, SUPERVISOR II,
   PARKING ENFORCEMENT DIVISION,
13 CITY OF OAKLAND, Officially and
   individually; RONALD ABERNATHY
14 SUPERVISOR II, PARKING
   ENFORCEMENT DIVISION, CITY OF
15 OAKLAND, Officially and individually;
   AMPCO SYSTEM PARKING; a California
16 Corporation; RICHARD KINDORF,
   PRESIDENT, AMPCO SYSTEM
17 PARKING, Officially and individually;
   ALFRED WEILAND, MANAGER,
18 AMPCO SYSTEM PARKING, Officially
   and individually; LOUIS VELA, GENERAL
19 MANAGER, AMPCO SYSTEM PARKING,:
   Officially and individually; and
20 JOHN and JANE DOES I Through 25,

21          Defendants.
22
23
24
25
26
27    IT IS HEREBY STIPULATED by and between (1) Plaintiffs HARJIT BHAMBRA and
28 LAKHBIR BHAMBRA and (2) Defendants AMPCO SYSTEM PARKING, RICHARD

2

KINDORF, ALFRED WEILAND and LOUIS VELA (collectively, "Defendants") through their

counsel of record that the above captioned action be and hereby is dismissed as to Defendants with

prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).

DATED: March 26, 2009

ROSS & WERSCHING LLP

By: _____

ALAN G. ROSS

Attorneys for Defendant AMPCO SYSTEM
PARKING, RICHARD KINDORF, ALFRED
WEILAND and LOUIS VELA

DATED: March ___, 2009

By: _____

HARJIT BHAMBRA

Plaintiff

DATED: March ___, 2009

By: _____

LAKHBIR BHAMBRA

Plaintiff

STIPULATION OF DISMISSAL AS TO DEFENDANTS AMPCO, KINDORF, WEILAND AND VELA
CASE NO. C08-05326 CRB

ROSS & WERSCHING LLP
ATTORNEYS AT LAW
3151 AIRWAY AVE., SUITE S-1
COSTA MESA, CA 92626
(714) 444-3900

# Exhibit B

**Alan Ross**

| | |
|---|---|
| **From:** | HARJIT BHAMBRA [harjitbhambra@sbcglobal.net] |
| **Sent:** | Friday, March 27, 2009 10:25 AM |
| **To:** | Alan Ross |
| **Subject:** | Re: Letter to Harjit and Lakhbir Bhambra dated March 26, 2009 |

Dear Mr. Ross:

I, am in receipt of your email, and here is my response, that we are taking the appel on
the Orders to the ninth circuit and have them look into the matter.

Thank You
Harjit Bhambra


--- On Thu, 3/26/09, Alan Ross <agr@rossllp.com> wrote:

> From: Alan Ross <agr@rossllp.com>
> Subject: Letter to Harjit and Lakhbir Bhambra dated March 26, 2009
> To: harjitbhambra@sbcglobal.net
> Cc: "Mark A. Delgado" <mdelgado@fablaw.com>, kawestmore@oaklandcityattorney.org, "Wong,
> Jannie" <JWong@oaklandcityattorney.org>, rwhite@fablaw.com
> Date: Thursday, March 26, 2009, 4:31 PM
> Please see the attached letter, with enclosure.
>
>
>
>
>
> Alan G. Ross
>
> Ross & Wersching LLP
>
> 3151 Airway Avenue, Suite S-1
>
> Costa Mesa, California 92626
>
> Tel.: (714) 444-3900
>
> Fax.: (714) 444-3901
>
>
>
> This email and any attachments hereto may contain private,
> confidential,
> privileged, and/or attorney work-product material for the
> sole use of
> the intended recipient. Any review, reliance, distribution
> or forwarding
> of this email (or any attachments) without express
> permission is
> strictly prohibited. If you are not the intended recipient,
> please
> contact the sender immediately and delete the original and
> any copies of
> this email and any attachments.

1


EXHIBIT B